UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AVAYA INC., <br><br>    Plaintiff, <br><br>v. <br><br>RAYMOND BRADLEY PEARCE, et al., <br><br>    Defendants. | Case No. 19-cv-00565-SI <br><br>**ORDER DENYING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM FILED BY DEFENDANTS ATLAS SYSTEMS, INC. AND TELEPHONE MAN OF AMERICA LLC** <br><br>Re: Dkt. Nos. 76, 77 |

On July 12, 2019, the Court held a hearing on defendants' motions to dismiss the complaint. For the reasons set forth below, the Court DENIES the motions.

**BACKGROUND**

On January 31, 2019, Avaya Inc. filed this lawsuit against Jason Hines; Dedicated Business Systems International, LLC ("DBSI"); US Voice & Data, LLC ("US Voice"); Raymond Bradley Pearce; Atlas Systems, Inc.; and Telephone Man of America LLC. Atlas and Telephone Man move to dismiss Avaya's first amended complaint ("FAC") for failure to state a claim.

**I.    The Parties**

Avaya provides hardware, software, and business communication solutions to a broad range of companies, from small businesses to large firms and government organizations. FAC ¶ 21 (Dkt. No. 59). Avaya is incorporated in Delaware and its principal place of business is in California. *Id.* ¶ 6. Avaya also offers IP Office ("IPO"), a telephone system that can support anywhere from five

to thousands of users at up to 150 different physical locations. *Id.* ¶ 23. Each phone or computer on the system requires a software license to work. *Id.* Avaya sells the IPO software licenses to authorized resellers, and then distributes the software to end customers through unique software license keys. *Id.*

Atlas is a Michigan corporation. *Id.* ¶ 10. Telephone Man is a Florida citizen and Avaya reseller. *Id.* ¶ 11. Plaintiff alleges Atlas and Telephone Man participated in the distribution scheme of unauthorized Avaya software licenses. *Id.* ¶ 37.

## II.  The Underlying Factual Allegations

Plaintiff alleges the defendants "perpetrat[ed] a massive illegal software piracy operation, which resulted in the theft and subsequent resale of thousands of unauthorized Avaya Internal Use Software Licenses ('Internal Use Licenses') to end customers duped into buying pirated software, rather than buying genuine Avaya software licenses through authorized Avaya distribution channels." FAC ¶ 1.

Avaya licenses its software through authorized resellers instead of selling its software directly to end customers or on third-party marketplaces. *Id.* ¶ 33. The software is licensed to a specific end customer and is generally non-transferrable. *Id.* Plaintiff claims the defendants have been selling unauthorized Avaya software licenses in competition with authorized Avaya software and misusing Avaya's trademarks to do so. *Id.* Avaya uncovered the unauthorized software license sales through purchasing sample software licenses resold by the defendants. *Id.* ¶ 35. Avaya tracked the unauthorized software licenses to a former employee, defendant Pearce. *Id.*

Pearce, an Oklahoma citizen, was an Avaya employee from 2000-2018. *Id.* ¶ 7. He allegedly distributed thousands of unauthorized software licenses worth millions of dollars. *Id.* ¶ 35. Pearce worked in an Oklahoma-based Avaya call center and would generate Internal Use Licenses to help resolve customer support issues. *Id.* ¶ 34. Pearce used his employee account and other former employee accounts to generate unauthorized software licenses and to avoid Avaya internal controls he knew were in place. *Id.* ¶¶ 35, 37. Pearce provided the unauthorized software licenses to reseller Hines to distribute to customers and other resellers such as Atlas and Telephone Man. *Id.* ¶ 37. The

Internal Use Licenses are functionally no different than the software licenses sold to customers. *Id*. ¶ 34. But the Internal Use Licenses are billed to Avaya instead of to the distributor or customer. *Id*. These unauthorized software licenses had no associated revenue or related customer orders. *Id*.

In 2016, plaintiff allegedly received a customer complaint regarding a high phone failure rate for a purchase of over a thousand Avaya-branded phones. *Id*. ¶ 49. Avaya discovered the phones were counterfeit, with "fake serial numbers, fake manufacturing codes, internal components that had been hacked and programmed to bypass internal software controls, and counterfeit factory seal box labels." FAC ¶ 49. The phones were traced back to Atlas. *Id*.

Plaintiff alleges that because Atlas and Telephone Man were authorized Avaya resellers, they should have known that Pearce and Hines were selling unauthorized software licenses because the prices were below Avaya's authorized resale price. *Id*. ¶ 98. Plaintiff also claims Hines' login credentials to Avaya's software licensing portal were used in Auburn Hills, Michigan, where Atlas has its principal place of business, and in the Tampa-area of Florida near Plant City, where Telephone Man has its principal place of business. *Id*. ¶¶ 11, 99.

### III. Defendants' 12(b)(6) Motions to Dismiss for Failure to State a Claim

Atlas moves to partially dismiss plaintiff's fourth cause of action because defendant does not traffic in circumventing technology. Atlas also argues plaintiff's seventh causes of action fails to allege how its software license keys verify whether software is infringing.

Telephone Man moves to dismiss the first through fourth causes of action on the ground that Avaya fails to provide fair notice for the basis of its claims. Telephone Man also joins in Atlas' motion to dismiss plaintiff's seventh cause of action. Finally, Telephone Man contends Avaya's eighth cause of action for unjust enrichment is preempted by federal law.

### LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to

3

dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a claim must be supported by facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In reviewing a Rule 12(b)(6) motion to dismiss, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *Usher v. Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). But "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft*, 556 U.S. at 678. Plaintiffs are also not "required to plead each claim in their complaints in a separate count." *OKI Electric Indus. Co., Ltd. v. LG Semicon Co., Ltd.*, No. CIV. 97-20310 SW, 1998 WL 101737, at *2 (N.D. Cal. Feb. 25, 1998).

**DISCUSSION**

**I.      Atlas' 12(b)(6) Motion to Dismiss**

    **A.      Avaya's Fourth Claim: Violation of the Digital Millennium Copyright Act**

Avaya's fourth cause of action is brought under the Digital Millennium Copyright Act ("DMCA"). 17 U.S.C. § 1201 (2018). Avaya alleges that Atlas has violated § 1201 by trafficking in counterfeit phones with hacked internal components. Atlas argues that Avaya fails to sufficiently allege how counterfeit phones violate the DMCA.

Avaya and Atlas disagree over what constitutes trafficking in a technology, "device, component, or part thereof" under sections 1201(a)(2) or 1201(b)(1). Section 1201(a)(2) "prohibits trafficking in devices that facilitate circumvention of access control measures," and § 1201(b)(1) "prohibits trafficking in devices that facilitate circumvention of measures that protect against *copyright infringement*." *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 946 (9th Cir. 2010) (emphasis in original).

4

Plaintiff alleges that Atlas trafficked in devices – the counterfeit phones – with internal components that were bypassed to circumvent Avaya's technological measures to control access to its software. At oral argument, plaintiff stated that the internal parts had to be bypassed for the software to run on the phones. Avaya does not need to explicitly call the phone a "tool," as Atlas argues. Reselling the phones is also more than mere "use." *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 443 (2nd Cir. 2001). Trafficking "means to transport, transfer, or otherwise dispose of, to another, for purposes of commercial advantage or private financial gain." 18 U.S.C. § 2320 (2018). Reselling constitutes trafficking. The Court concludes that Avaya has sufficiently alleged its DMCA claim.

### B. Avaya's Seventh Claim: Trafficking in Counterfeit or Illicit Labels

Avaya's seventh cause of action is brought under 18 U.S.C. § 2318. Avaya alleges that Atlas has violated § 2318 by distributing unauthorized software licenses. Atlas contends that Avaya fails to allege how Avaya's software license keys verify whether software is infringing.

Avaya contends its software license keys verify software's authenticity. An "illicit label" is a "genuine certificate" or "similar labeling component" that is used by the copyright owner to "verify" that a "copy of a computer program" is "not counterfeit or infringing of any copyright," that is then misused and "knowingly falsified in order to designate a higher number of users or copies than authorized." 18 U.S.C. § 2318 (2018).

Here, Avaya alleges that its software license keys verify that software is not infringing any copyright. Pearce and Hines allegedly distributed unauthorized software licenses to resellers such as Atlas and Telephone Man to sell more software licenses than plaintiff authorized. Avaya also claims its software license keys are "encrypted alphanumeric codes" containing authorized software. FAC ¶ 96. The keys contain specific "software features" purchased by the customer, ensuring she receives what she specifically ordered. *Id*. Thus, plaintiff "show[s] how each genuine … license key is matched to a particular copy of a [software] program." *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, No. 17-CV-00561-WHO, 2017 WL 3485881, at *12 (N.D. Cal. Aug. 15, 2017). Therefore, Avaya has stated a claim under 18 U.S.C. § 2318.

## II. Telephone Man's 12(b)(6) Motion to Dismiss

### A. Avaya's First Claim: Federal Trademark Infringement and Counterfeiting

Avaya's first cause of action alleges a violation of 15 U.S.C. § 1114 for federal trademark infringement and counterfeiting. Avaya alleges that "each defendant" has violated § 1114 by selling counterfeit products (the stolen Internal Use Licenses) without Avaya's authorization and sold infringing products (by using Avaya's marks without authorization). FAC ¶ 55.

Telephone Man argues that a claim for trademark infringement and a claim for counterfeit of a registered mark are distinct claims that must be pled separately. However, plaintiffs are not "required to plead each claim in their complaints in a separate count." *OKI Electric*, No. CIV. 97-20310 SW, 1998 WL 101737, at *2. The FAC alleges how Telephone Man has engaged in trademark infringement and counterfeiting, and thus Avaya has sufficiently alleged its § 1114 claim.

### B. Avaya's Second Claim: Federal Unfair Competition

Avaya's second cause of action is brought under 15 U.S.C. § 1125(a). Plaintiff alleges that Telephone Man has violated § 1125(a) by misusing Avaya marks to mislead customers. Telephone Man argues that Avaya fails to provide fair notice as to whether it is claiming "false association" under § 1125(a)(1)(A) or "false advertising" under § 1125(a)(1)(B).

When a plaintiff brings a claim under section 1125(a), the plaintiff must allege that a defendant "(1) use[d] in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics of his or another person's goods or services." *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007). The FAC alleges that "[e]ach defendant did, without authorization, use in commerce the Avaya Marks, and also make false designations of origin, false or misleading descriptions of fact, and/or false or misleading representations of fact, which were and are likely to cause confusion, or cause mistake, or to deceive customers as to the affiliation, connection, or association of Defendants with Avaya, and/or as to the origin, sponsorship or approval of Defendants' goods, services, or commercial activities." FAC ¶ 60. These allegations are sufficient to state a claim under section 1125(a), and the Court disagrees with Telephone Man's suggestion

Avaya is required to split its federal unfair competition claim into separate causes of action.

### C. Avaya's Third Claim: Federal Direct and Indirect Copyright Infringement

Avaya's third cause of action is brought under 17 U.S.C. § 501. Plaintiff alleges that Telephone Man has violated § 501 by distributing unauthorized software licenses. Telephone Man moves to dismiss this claim on the ground that Avaya fails to provide fair notice of how Telephone Man committed direct or indirect copyright infringement.

In "patent, trademark … and copyright infringement cases, any member of the distribution chain of allegedly infringing products can be jointly and severally liable for the alleged misconduct." *Adobe*, 125 F. Supp. 3d at 973 (citing *Unicolors, Inc. v. Macy's, Inc*., No. CV 14–08611–RGK, 2015 WL 1020101, at *4 (C.D. Cal. Mar. 6, 2015) (internal quotation marks omitted)).

Here, Avaya has alleged Telephone Man is liable for direct copyright infringement by distributing Avaya's software without authorization and in violation of Avaya's copyrights, and indirect copyright infringement by inducing, causing, or materially contributing to the infringing acts of their customers. FAC ¶ 68. These allegations are sufficient to state a claim for direct and indirect copyright infringement.

### D. Avaya's Fourth Claim: Violation of the Digital Millennium Copyright Act

Avaya's fourth cause of action is brought under 17 U.S.C. § 1201. Plaintiff alleges that Telephone Man has violated § 1201 by circumventing Avaya's technological measures to control access to its software. Telephone Man moves to dismiss this claim on the ground that Avaya fails to provide fair notice as to which claim under which provision of the DMCA is being alleged.

Here, Avaya asserts liability under both sections 1201(a) and 1201(b)(1). Opp'n 14:5-25 (Dkt. No. 93). As discussed earlier, plaintiffs are not "required to plead each claim in their complaints in a separate count." *OKI Electric*, No. CIV. 97-20310 SW, 1998 WL 101737, at *2. Thus, Avaya has sufficiently pleaded under the DMCA.

### E. Avaya's Seventh Claim: Trafficking in Counterfeit or Illicit Labels

Telephone Man joins in Atlas' motion to dismiss plaintiff's seventh claim. For the reasons set forth above, the Court concludes that plaintiff has stated a claim.

### F. Avaya's Eighth Claim: Unjust Enrichment and Preemption

Finally, Avaya's eighth cause of action is for unjust enrichment. Plaintiff alleges that Telephone Man has unjustly received benefits from its unauthorized access of Avaya's software licensing portal. Telephone Man contends that Avaya's unjust enrichment claim is preempted under 17 U.S.C. § 301(A) because Avaya's claim is not qualitatively different from a copyright infringement claim.

Federal copyright law "governs only copying." *Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 904 (9th Cir. 1992). Where a state law claim "contains an element not shared by the federal law" that "changes the nature of the action so that it is *qualitatively* different from a copyright infringement claim" there is no preemption. *Summit Machine Tool Mfg. Corp. v. Victor CNC Systems, Inc.*, 7 F.3d 1434, 1439-40 (9th Cir. 1993) (internal quotation marks and citation omitted) (emphasis in original). An example of an element that prevents preemption is "*improper acquisition* of the work at issue." *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 989 (N.D. Cal. 2015). For example, the *Rasmussen* court found the defendant's misuse of the plaintiff's work was not preempted by federal copyright law. *Rasmussen*, 958 F.2d at 904. The plaintiff complained "not about the actual copying of the documents, but of their use as a shortcut in obtaining a valuable government privilege." *Id*. The *Opperman* court also found the plaintiffs' claims involved "more than the mere reproduction of Plaintiffs' address book data; they include the unauthorized access, transmission, misuse, and misappropriation of that data." *Opperman*, 84 F. Supp. 3d at 989.

The Court concludes that plaintiff's unjust enrichment claim is not preempted because plaintiff has alleged additional elements in support of its claim. Avaya alleges that the basis of its unjust enrichment claim is Telephone Man's trademark infringement, counterfeiting, and trafficking in illicit labels, and Avaya explicitly excludes its copyright infringement allegations from its claim for relief for unjust enrichment. FAC ¶ 103. Like the *Rasmussen* and *Opperman* plaintiffs, Avaya's

8

complaint is not about copying but of Telephone Man's "improper acquisition" and "unauthorized use" of plaintiff's software licenses for monetary gain. Plaintiff also alleges that Telephone Man "misused" Hines' login credentials to download unauthorized Avaya software licenses to "shortcut" Avaya's established reseller distribution chain. FAC ¶ 99. Plaintiff alleges that Telephone Man "misappropriated" Avaya software licenses in reselling them to end customers as authorized. Thus, Avaya's unjust enrichment claim is not preempted by § 301(A).

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES Atlas and Telephone Man's motions to dismiss Avaya's complaint for failure to state a claim.

**IT IS SO ORDERED**.

Dated: July 18, 2019

SUSAN ILLSTON
United States District Judge