RICHARD J. NELSON (State Bar No. 141658)
E-Mail: rnelson@sideman.com
ZACHARY J. ALINDER (State Bar No. 209009)
E-Mail: zalinder@sideman.com
LYNDSEY C. HEATON (State Bar No. 262883)
E-Mail: lheaton@sideman.com
ANGELA M. HE (State Bar No. 319351)
E-Mail: ahe@sideman.com
SIDEMAN & BANCROFT LLP
One Embarcadero Center, Twenty-Second Floor
San Francisco, California 94111-3711
Telephone: (415) 392-1960
Facsimile: (415) 392-0827

Attorneys for Plaintiff
AVAYA INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| AVAYA INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>RAYMOND BRADLEY PEARCE, et al.,<br><br>Defendants. | Case No. 3:19-cv-00565 SI<br><br>**PLAINTIFF AVAYA INC.'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Judge: Honorable Susan Illston<br><br>Date: February 5, 2021<br>Time: 10:00 a.m.<br>Crtrm.: 1, 17th Floor |

TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on February 5, 2021 at 10:00 a.m., or as soon thereafter as this matter may be heard in Courtroom 1, on the 17th Floor, of this courthouse, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiff Avaya Inc. ("Avaya") will and hereby does move for leave to file a Third Amended Complaint, in the above-captioned matter. The Third Amended Complaint seeks to include Telcom International Trading Pte. Ltd. ("Telcom") and Metroline, Inc. ("Metroline") as additional defendants for harms they caused that arise out of a same nucleus of events involving the other defendants set forth in the operative complaint. The amended complaint would also remove defendants Telephone Man of America, LLC, Kelly Petry, Drew Telecom Group, and Andrew Roach from the pleading caption and change them to former defendants because they have been dismissed from the action.

This motion is made pursuant to Federal Rules of Civil Procedure 15(a)(2) and 20(a)(2) and is based upon this Notice of Motion and Motion, the following Memorandum of Points and Authorities in support of this Motion, the concurrently filed declaration in support, any reply papers filed in support of this Motion, the complete files and records in this action, and any further information that may be presented to the Court at or before the hearing on this Motion.

DATED: December 31, 2020         SIDEMAN & BANCROFT LLP

By: _____
Lyndsey C. Heaton
Attorneys for Plaintiff
AVAYA INC.

Case No. 3:19-cv-00565 SI
NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT;
MEMO. OF POINTS AND AUTHORITIES IN SUPPORT

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED ............................1

II. FACTUAL BACKGROUND ...........................................................................................1

III. PROPOSED AMENDMENTS TO THE COMPLAINT ..................................................5

IV. ARGUMENT .....................................................................................................................6

    A. Legal Standard .......................................................................................................6

    B. Avaya Has Diligently Sought Amendment ............................................................7

    C. Avaya Brings This Motion In Good Faith .............................................................8

    D. There Is No Prejudice To Granting Amendment ...................................................9

    E. The Amendment Would Not Be Futile ................................................................10

        1. Metroline and Telcom Are Properly Joined In This Amended Complaint .................................................................................................11

V. CONCLUSION ................................................................................................................13

**TABLE OF AUTHORITIES**

Page(s)

## Cases

*American Electric Power Co. v. Westinghouse Electric, Corp.*,
   418 F. Supp. 435 (S.D.N.Y. 1976) ............................................................................................. 8

*Bravado Int'l Grp. Merch. Servs. v. Cha*,
   No. CV 09-9066 PSG (CWX), 2010 WL 2650432 (C.D. Cal. June 30, 2010) ........................ 12

*Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*,
   No. 10-CV-419-GPC WVG, 2013 WL 2631333 (S.D. Cal. June 11, 2013) ............................ 12

*Chudacoff v. University Medical Center*,
   649 F.3d 1143 (9th Cir. 2011) ................................................................................................... 6

*Cont'l Cas. Co. v. U.S.*,
   No. 02-5292 VRW, 2005 WL 8162326 (N.D. Cal. June 22, 2005) .................................... 9, 10

*E.E.O.C. v. Boeing Co.*,
   843 F.2d 1213 (9th Cir.), *cert. denied*, 488 U.S. 889 (1988) ................................................... 7

*Eminence Capital, LLC v. Aspeon, Inc.*,
   316 F. 3d 1048 (9th Cir. 2003) ............................................................................................. 6, 9

*Foman v. Davis*,
   371 U.S. 178 (1962) .................................................................................................................. 6

*Genentech, Inc. v. Abbott Labs.*,
   127 F.R.D. 529 (N.D. Cal. 1989) ......................................................................................... 7, 10

*Holly v. Potter*,
   No. 07-00583 MCE(EFB) ....................................................................................................... 10

*Howey v. United States*,
   481 F.2d 1187 (9th Cir. 1973) .......................................................................................... 6, 7, 8

*Island Creek Coal Co. v. Lake Shore, Inc.*,
   832 F.2d 274 (4th Cir. 1987) .................................................................................................... 8

*Kalsi v. Forte Sys., LLC*,
   No. 06-2366 ............................................................................................................................ 10

*Missouri ex rel. Koster v. Harris*,
   847 F.3d 646 (9th Cir. 2017) .................................................................................................. 11

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
   No. CV 96–7438 DDP, 1997 WL 381967 (C.D. Cal. Mar. 19, 1997) .................................... 12

NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT;
MEMO. OF POINTS AND AUTHORITIES IN SUPPORT

*Loehr v. Ventura County Cmty. Coll. Dist.*,
 743 F.2d 1310 (9th Cir. 1984) .................................................................................. 6

*N. Face Apparel Corp. v. Dahan*,
 No. CV1304821-MMM-MANX, 2014 WL 12596716 (C.D. Cal. Mar. 14, 2014) ............................................................................................................................. 12

*United States v. Webb*,
 655 F.2d 977 (9th Cir. 1981) ..................................................................................... 7

**Other Authorities**

Fed. R. Civ P.11 ........................................................................................................ 8

Fed. R. Civ P.12(b)(6) ............................................................................................. 11

Fed. R. Civ. P. 15(a)(1)-(2) ................................................................................... 6, 9

Fed. R. Civ P. 20 .......................................................................................... 2, 11, 12

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED**

For years, Defendants have been perpetrating a massive illegal software piracy operation which resulted in the theft and subsequent distribution of thousands of unauthorized Avaya Internal Use Software Licenses ("Internal Use Licenses") to end customers duped into buying pirated software, rather than buying genuine Avaya software licenses through authorized Avaya distribution channels. These Defendants have also been distributing used software licenses in violation of the Avaya End User License Agreement ("EULA"). In addition, Avaya uncovered that Defendant Atlas Systems Inc. ("Atlas") was not only distributing the stolen and otherwise infringing software licenses, but also was trafficking in large quantities of counterfeit "Avaya" branded phones, as well as genuine Avaya phones that were repackaged with counterfeit packaging and counterfeit labels. Through this Motion, Avaya seeks leave to amend the Complaint to add two additional defendants who were recently determined to also be involved in the same alleged unlawful conduct – Metroline and Telcom.

To that end, the proposed Third Amended Complaint alleges that Metroline has distributed both stolen and otherwise infringing Avaya software licenses, and that Telcom is the source of the counterfeit phones sold by Atlas. Avaya seeks to add these two additional Defendants to this action` on the grounds that: (i) their participation and liabilities arise from the same series of transactions and occurrences as do the liabilities of the other Defendants, (ii) there are common issues of law and fact between these new Defendants and the others who are already party to this action, and (iii) judicial economy warrants their addition to the action now.[1]

**II.    FACTUAL BACKGROUND**

On January 31, 2019, Avaya filed a lawsuit in this court alleging that various Defendants engaged in trademark and copyright infringement, among other causes of action, and included

---

[1] The amended complaint will also revise and/or remove allegations against several former defendants that are no longer current Defendants: Telecom Spot; Telephone Man of America, LLC; Kelly Petry; Drew Telecom Group; and Andrew Roach.

both the software piracy and counterfeiting allegations discussed above. *See* Dkt. No 1. On April 5, 2019, Avaya filed a First Amended Complaint, which added as defendants: Tri-State Communication Services LLC (doing business as "US Voice and Data, LLC") and Sharkfish Corp. *See* Dkt. No. 59. After several Defendants filed unsuccessful motions on December 16, 2019, Avaya filed the Second Amended Complaint ("SAC"), adding as Defendants Featurecom, Inc., Steve Geraci, Tom Conroy, Drew Telecom Group, Inc., and Andrew Roach. *See* Dkt. No. 147.

As mentioned above, Avaya's SAC alleges that, for years, the Defendants (both named and as-of-then-unidentified) worked together to perpetrate a massive, illegal software piracy operation which resulted in the theft and subsequent distribution of thousands of unlawfully created Avaya Internal Use Licenses. *See* SAC, ¶ 1. These Defendants were also distributing used software licenses in violation of Avaya's EULA. The current named Defendants are some of the resellers that have been uncovered thus far: Atlas, Dedicated Business Systems International ("DBSI"), Tri-State Communication Service LLS ("Tri-State"), Defendant Jason Hines ("Hines") – who controls both DBSI and Tri-State – Featurecom, Steve Geraci, and Tom Conroy (collectively the "Reseller Defendants").

This unlawful enterprise has caused Avaya significant monetary damages, and has severely undermined Avaya's brand, goodwill, and reputation with customers. *Id.* at ¶ 4. As alleged in the SAC, Avaya's investigation to date into the scheme to create and sell these stolen Internal Use Licenses and other infringing licenses has been able to uncover only a portion of the entities involved, hence Avaya has alleged that: "The true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants named herein as DOES 9 through 50, inclusive, are unknown to Avaya who, therefore, sues said Defendants by such fictitious names. Avaya will amend this Complaint to reflect the true names and capacities of these DOE Defendants when the same shall have been fully and finally ascertained." *Id.* at ¶ 16.

Owing to the nature of the scheme, information regarding (1) the identification and number of total pirated, Internal Use Licenses sold, (2) the identification of the number of otherwise-infringing licenses distributed, (3) the identify of each entity or individual involved in the chain of

distribution, and (4) the damages incurred by Avaya are uniquely within the hands of the current named Defendants and non-parties who participated in the purchase and sale of these products.

Avaya has also alleged claims against Defendant Atlas for its resale of over a thousand counterfeit "Avaya" branded phones, as well as apparently genuine Avaya phones – marketed and sold as "new" – that were repackaged and resold with counterfeit labels that closely mimicked genuine Avaya factory labels and bore counterfeit Avaya trademarks. *Id.* at ¶ 54. Defendant Atlas has not denied selling such phones, but claims it did not create the counterfeit products, yet refused to identify its source of the counterfeit phones until very recently. *See* Declaration of Lyndsey Heaton in Support of Motion to Amend ("Heaton Decl."), ¶¶ 10-13.

**Subpoena to Metroline**

Because the named Defendants and various unknown non-parties in this scheme used pseudonyms, shared logins to Avaya's ADI system (concealing their true identities), distributed the stolen Internal Use Licenses both directly and indirectly through other resellers all over the country, and because discovery has been stayed as to Defendant Pearce, Avaya was unable to uncover the true scope of the scheme without discovery from Defendants and third parties.

To that end, on June 7, 2019, Avaya issued a subpoena to Metroline seeking information regarding its sales of Avaya software licenses and license keys, as well as other information related to Avaya's claims. *See* Heaton Decl., ¶ 4. In response to Avaya's subpoena, Metroline filed a Motion to Quash in the Eastern District of Michigan on July 1, 2019. *See id.*, ¶ 5. While briefing on such motion was completed in September 2019, the court in the Eastern District of Michigan did not rule on the Motion to Quash until seven months later, on April 9, 2020. *See id.* The Court denied Metroline's motion finding that: "Avaya's claims arise out of stolen property rights; specifically, internal use licenses, involving millions of dollars. To establish the scope of the scheme, Avaya requires sales data and product information. Given the evidence setting forth a connection between Metroline and a named defendant, the Court finds no reason to limit the discovery as improper." *See id.*, ¶6, and Ex C thereto at p. 11. Following the court's order, Metroline then moved for a protective order in order to designate the material it produced as Confidential or Highly Confidential and refused to produce any documents until such issue was

decided. *See id.*, ¶ 7.  The parties then negotiated the entry of a Stipulated Protective Order in that case, which mirrors the Stipulated Protective Order in the instant action. *See id.* Following the entry of that Protective Order, Metroline finally produced its responsive documents on July 31, 2020. *See id.* While Avaya was now in possession of some of Metroline's relevant documents, they were produced as 19,369 separate files which required significant analysis by Avaya's outside counsel in order to determine the extent of Metroline's infringing and otherwise injurious sale and distribution of Avaya software, leading to the allegations set forth in the Third Amended Complaint. *See id.*, ¶ 8.  Since then, Avaya attempted to contact Metroline in order to potentially reach pre-suit resolution of Avaya's claims, but Metroline did not engage. *See id.*, ¶ 9.

### **Identification of Telcom As Atlas' Counterfeit Product Source**

Avaya began requesting that Atlas identify the source of the counterfeit "Avaya" branded phones more than a year ago and, at least as early as February 20, 2020, Atlas' prior counsel agreed to provide such information.  *See id.*, ¶ 10. However, as months passed without that information being provided, on June 8, 2020, Avaya issued its First Set of Interrogatories to Atlas, seeking the identification of the source of the more than 1,600 counterfeit products that Avaya had determined were sold and trafficked by Atlas. *See id..*, ¶ 11.  Atlas failed to respond to such Interrogatories (or communicate any request for extension) by the deadline under the Federal Rules.[2]  *See id.*, ¶ 12.  After continual pushing by Avaya for Atlas to reveal its source and to cease impeding Avaya's ability to police and seek redress from a now-known counterfeit trafficker, on July 27, 2020, via letter, Atlas finally provided the information identifying Telcom as the vendor for the approximately 1,600 counterfeit phones Atlas sold,. *See id.*, ¶ 13.  Since then, Avaya attempted to contact Telcom in order to potentially reach pre-suit resolution of Avaya's claims, but Telcom has not responded to Avaya. *See id.,* ¶ 15.

---

[2] On July 17, 2020, Avaya inquired about Atlas' failure to respond, and Atlas then requested a three-week extension, which Avaya granted. *See id,,* ¶_12. Atlas eventually responded to the Interrogatories on August 4, 2020, still without information regarding Telcom included. *See id.*, ¶_14. It wasn't until November 2, 2020 that Atlas supplemented its Interrogatory responses to identify Telcom officially. *See id.*

In November 2020, Avaya raised the issue of adding Metroline and Telcom as Defendants in the context of the parties meet and confer prior to the Joint Case Management Conference on December 4, 2020. *See id.*, ¶ 16. Defendant Atlas, however, refused to stipulate to the addition of either party. *See id.* At the December 4, 2020 status conference, the Court set December 31, 2020 as the deadline by which Avaya should seek to amend its pleadings to add these two Defendants. *See* Dkt. No. 230. The other Defendants have not stated a position with respect to Avaya's proposed amendment, despite requests from Avaya. *See* Heaton Decl., ¶ 16.

### III.  PROPOSED AMENDMENTS TO THE COMPLAINT[3]

The additional allegations against Metroline and Telcom in the proposed Third Amended Complaint are common with the facts alleged against the other defendants in the presently operative pleading, to wit:

- Metroline's alleged activities are in line with the other Reseller Defendants, who have been improperly reselling and distributing Avaya software licenses, in violation of Avaya's End User License Agreement ("EULA"). *See* Third Amended Complaint, attached to the Heaton Decl. as Exhibit A ["Exh. A"], ¶ 38.

- Metroline, along with other Reseller Defendants, are alleged to have resold and distributed software licenses that Defendant Pearce stole from Avaya. Exh. A, ¶¶ 41-45.

- Metroline, along with other Reseller Defendants, are alleged to have knowingly infringed Avaya's trademarks and copyrights. Exh. A, ¶ 55.

- Telcom is alleged to have been the source of the counterfeit "Avaya" branded phones that were then imported into the United States and then further trafficked and resold by Atlas. Exh. A, ¶¶ 56, 58.

The proposed new Defendants engaged in conduct in common with the existing

---

[3] Avaya has attached a redline version of the Third Amended Complaint as compared to Second Amended Complaint, as Exhibit B to the Heaton Decl.

Defendants and the causes of action against are also common with the causes of action currently alleged.

## IV. ARGUMENT

### A. Legal Standard

Pursuant to Rule 15(a) of the Federal Rules, following amendment once "as a matter of course", "a party may amend its pleading only with the opposing party's written consent or the court's leave," and "the court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(1)-(2). Granting leave to amend should be applied with extreme liberality. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F. 3d 1048, 1052 (9th Cir. 2003) (citations omitted). As stated by the Supreme Court, "in the absence of any apparent or declared reason . . . the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). When considering a motion for leave to amend, the Ninth Circuit has summarized the factors for the court to consider as follows: (1) undue delay; (2) bad faith; (3) prejudice to the opponent; and (4) futility of amendment. *Loehr v. Ventura County Cmty. Coll. Dist.*, 743 F.2d 1310, 1319 (9th Cir. 1984); *see also Chudacoff v. University Medical Center*, 649 F.3d 1143, 1152 (9th Cir. 2011) (leave to amend "generally shall be denied only upon showing of bad faith, undue delay, futility, or undue prejudice to the opposing party"). However, not all factors merit equal weight and the consideration of prejudice is the most important factor. *Eminence Capital, LLC, v. Aspeon*, 316 F. 3d at 1052. Where there is a lack of prejudice to an opposing party and the amended complaint is obviously not frivolous, nor made as a dilatory maneuver in bad faith, it is an abuse of discretion to deny motion to amend complaint. *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973). The non-moving party bears the burden of showing why leave to amend should not be granted. *Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. 529, 530–31 (N.D. Cal. 1989).

Here, all of the factors weigh in favor of granting amendment to add an additional Reseller Defendant and the counterfeit source identified by Defendant Atlas, both of whom have culpability exactly in line with the current Defendants in this action and who engaged in transactions relating to illegal and infringing sales of "Avaya" products with the current Defendants.

### B. Avaya Has Diligently Sought Amendment

Delay alone, even if shown, is insufficient to deny leave to amend – rather a party opposing a motion leave to amend must also show prejudice to support denial of the motion. *See United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981) ("[D]elay alone no matter how lengthy is an insufficient ground for denial of leave to amend."); *Howey v. United States*, 481 F.2d at 1191 ("Only where prejudice is shown or the movant acts in bad faith are courts protecting the judicial system or other litigants when they deny leave to amend a pleading."). Here, the facts show that Avaya has been diligent in seeking information regarding Metroline's connection to the infringing distribution chain and in pressing Atlas to identify Telcom as the source of the counterfeit "Avaya" phones it sold.

Whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading is relevant to evaluating questions of delay. *E.E.O.C. v. Boeing Co.*, 843 F.2d 1213, 1222 (9th Cir.), *cert. denied*, 488 U.S. 889 (1988). Here, there is no question that Atlas had not identified the source of the counterfeit "Avaya" branded products it sold until July 27, 2020, despite the fact that Avaya repeatedly sought this information from Atlas and that Atlas had promised to provide it. Atlas also cannot dispute that it was uniquely in possession of the identity of its source of the counterfeit phones it sold. It would be perverse to allow Atlas to withhold this information for months (if not years) and then to rely on Avaya's inability to obtain the identity of the counterfeit source as a basis for arguing there is undue delay or prejudice here.

With respect to Metroline, as described above, Avaya diligently sought information from Metroline beginning in June of 2019 in order to determine what information it could provide about the infringing distribution chain. For reasons outside of Avaya's control, Metroline's production in response to Avaya's subpoena did not occur until July 31, 2020. While Avaya had a basis to believe that Metroline was involved in some manner in distributing infringing and stolen software licenses when the subpoena to Metroline was issued, Avaya still needed a Rule 11 basis to bring Metroline into this case and analysis of Metroline's data – which was voluminous and required extensive analysis – provided that information.

In light of the above and the obstacles preventing Avaya from earlier learning of the extent of Metroline's involvement and the identify of Telcom, there has been no undue delay here. Avaya brought this Motion promptly, in good faith, and for the legitimate purpose of a global resolution in a single action.

Even if this Court were to find there was delay in bringing this motion, despite the fact that it is brought just months after learning of additional facts supporting the amendment, such finding would not require denial as courts routinely grant leave to amend after much longer delays, as long as other parties have not been prejudiced. *See, e.g., Howey v. United States*, 481 F.2d 1187, 1193 (9th Cir. 1973) (finding the district court abused its discretion in denying leave to amend five years after the original complaint was filed, because no prejudice was shown and the amendment was not frivolous or made in bad faith); *Island Creek Coal Co. v. Lake Shore, Inc*., 832 F.2d 274, 279-80 (4th Cir. 1987) (three month delay between time party acquired knowledge of facts upon which new count rested and time when party sought leave to amend excusable where facts underlying new count were well known to the opposing party); *American Electric Power Co. v. Westinghouse Electric, Corp*., 418 F. Supp. 435, 442 (S.D.N.Y. 1976) (nineteen month delay between date of filing complaint and time when leave was sought to amend complaint not inordinate or inexcusable where proposed amendment amplified the allegations of fraud, arose out of same transaction as the other causes of action, constituted additional theory of recovery, and did not prejudice non-moving party). In sum, there has been no undue delay here and, in any event, there is no prejudice resulting from any perceived delay that would warrant denial of leave to amend.

### C. Avaya Brings This Motion In Good Faith

There can be no question of Avaya's good faith here, as it moves to add these new Defendants in order to seek global resolution of its claims and preserve party and court resources. In doing so, Avaya seeks to avoid additional, near-duplicate actions, that would require the parties to relitigate the very same facts alleged in the instant action. Judicial economy will be facilitated by allowing amendment given the common core of questions of law and fact relevant to Metroline, Telcom, and the current Defendants. Each of the Reseller Defendants' activity is interconnected,

as is Metroline's, as each of these entities are involved in the distribution of the stolen licenses created by Pearce. And Telcom's counterfeit trafficking is directly tied to Atlas. Requiring Avaya to file separate actions against Metroline and Telcom would be an unduly burdensome, inefficient, and unnecessary venture. In such a case, Avaya would be required to put on the same evidence in two (or three) trials, including, but not limited to: (1) the history of Avaya; (2) its copyrights and trademarks; (3) the infringement of Avaya's intellectual property rights by Pearce; (4) the infringing distribution scheme involving the current Reseller Defendants; (5) Atlas' sale of counterfeit "Avaya" branded phones; and (6) damages suffered by Avaya as a result of this infringement. Evidence from the current Defendants would undoubtedly be relevant to any new action that Avaya would be required to file. Further, since Metroline and Telcom's activities are linked directly to those of the current Defendants, most of the witnesses and documentary proof with respect to Avaya's claims against the additional Defendants will be the same as those involved in the instant action and any witnesses relating specifically to Metroline's and Telcom's infringing activity are relevant to the instant action as well, to prove culpability of the current Defendants as well as damages. Avaya brings this motion to amend now, in good faith, to avoid this duplication and waste of time and effort.

### D. There Is No Prejudice To Granting Amendment

In order "to justify denial of leave to amend, the prejudice must be substantial." *Cont'l Cas. Co. v. U.S.*, No. 02-5292 VRW, 2005 WL 8162326, at *5 (N.D. Cal. June 22, 2005). Absent prejudice, or a strong showing of any of the remaining reasons for denial, "there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F3d at 1052 (9th Cir. 2003). In this case, allowing amendment would not prejudice Defendants as the fact discovery cut off is still seven months away, as trial is still fifteen months away, as the parties are still making their way through document discovery, and as no depositions have taken place in this matter, let alone been noticed. *See* Dkt. No. 196; Heaton Decl., ¶ 17. Tellingly, Defendant Atlas, which has indicated it may oppose this motion, has not produced **any** email in this action, despite the fact that Avaya issued its First Requests for Production on June 7, 2019. *See* Heaton Decl., ¶ 18. Certainly Atlas cannot be heard to complain

that discovery is at an "advanced" stage if it has yet to even begin production of its email.

Indeed, the court in *Genentech, Inc. v. Abbott Labs.*, found that, even where additional discovery necessitated by an amendment to the complaint would require re-deposing witnesses, additional document searches, and potentially delaying the trial date, such facts did not constitute undue prejudice to the defendant. *Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. at 531. The court in *Cont'l Cas. Co. v. U.S.*, found similarly even where the motion to amend was brought *after* the close of discovery. *Cont'l Cas. Co. v. U.S.*, 2005 WL 8162326, at *5 ("Most important for the present motion, the need for additional discovery is insufficient by itself to deny a proposed amended pleading.") (citations omitted); *see also Kalsi v. Forte Sys., LLC*, No. 06-2366 WBS(GGH), 2007 WL 4180158, *2 (E.D. Cal. Nov. 26, 2007) (good cause to name a new defendant was shown because the "action [was] still in its early stages and discovery [was] not set to conclude until February 22, 2008"); *Holly v. Potter*, No. 07-00583-MCE-EFB, 2007 WL 4181775, *2 (E.D. Cal. Nov. 21, 2007) ("At the outset, the Court notes that amending Plaintiff's complaint may not necessarily require an amendment to the [pre-trial scheduling order] as the discovery cut-off is more than six months in the future, the expert disclosure deadline is more than nine months in the future, and all other deadlines are more than one year in the future").

Contrary to the facts of the above cases, here, the parties are in the midst of exchanging (or beginning) document productions and no depositions have been scheduled or even noticed. *See* Heaton Decl., ¶ 17. Additionally, the proposed amendment only aims to add two defendants without any substantive changes to the claims against the current Defendants. *See* Heaton Decl., Ex. B. As such, amendment would not greatly alter the nature of the litigation nor would it require the defendants to undertake, at a late hour, an entirely new course of defense, as might be sufficient to justify denial.

In short, there is no prejudice to granting leave to amend here and, thus, the most important factor weighs heavily in Avaya's favor. *Even if* Defendants could identify some legitimate prejudice ensuing from amendment, they cannot possibly show that such prejudice would be so substantial as to warrant a denial.

E.  **The Amendment Would Not Be Futile**

A claim is only considered futile to warrant denial of leave to amend if there is no set of facts that can be proved under the amendment that would constitute a valid claim. *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017). Here, as evidenced by the fact that the initial Defendants' motions to dismiss based on Fed. R. Civ P.12(b)(6) were all denied, and as the allegations against Metroline and Telcom follow the same allegations as the current Defendants, there is no reasoned argument that amendment here would be futile. Defendant Atlas has argued, however, that joinder of Metroline in the current action is not proper if there are no direct allegations that Metroline purchased or sold infringing and/or stolen licenses from Atlas itself. This argument is untethered to the law and ignores the facts as pled which show how all the Reseller Defendants (and proposed Defendant Metroline) participated in the infringing distribution scheme, such that they are part of the same "transaction and occurrence" as the current Defendants. The same is true for Telcom.

### 1. Metroline and Telcom Are Properly Joined In This Amended Complaint

Pursuant to Fed. R. Civ. P. 20(a)(2), "[p]ersons . . . . may join in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Under Rule 20, both Metroline and Telcom are properly joined in this action because their liabilities arise from the same series of transactions and occurrences as do the liabilities of the other defendants, and there are common issues of law and fact between these new defendants and the others who are already party to this action. *See id.*

The Ninth Circuit has described "transaction or occurrence" as referring to "similarity in the factual background of a claim; claims that 'arise out of a systematic pattern of events' arise from the same transaction or occurrence." *Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*, No. 10-CV-419-GPC WVG, 2013 WL 2631333, at *2 (S.D. Cal. June 11, 2013) *quoting Bautista v. Los Angeles Cty.*, 216 F.3d 837, 842–43 (9th Cir. 2000); *see also Lockheed Martin Corp. v. Network Solutions, Inc.*, No. CV 96–7438 DDP (ANx), 1997 WL 381967, *3 (C.D. Cal. Mar. 19,

1997) ("Courts have long held that in patent, trademark, literary property, and copyright infringement cases, any member of the distribution chain can be sued as an alleged joint tortfeasor. Since joint tortfeasors are jointly and severally liable, the victim of trademark infringement may sue as many or as few of the alleged wrongdoers as he chooses,") quoting *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.*, 647 F.2d 200, 207 (D.C. Cir. 1981)).

Applying this standard, the court in *Brighton* found joinder proper where a group of companies had copied plaintiff's handbag and watch designs. *Brighton Collectibles*, 2013 WL 2631333, at *2. In deciding a motion to sever claims for infringement and interpreting Rule 20, the court considered whether the claims against the defendants relating to handbags arose out of the same transaction or occurrence as claims concerning the watches. *See id.* Relevant to the court's analysis was that the "Handbag Defendants" and the "Watch Defendants" all sold to the same reseller, who "acted in concert with [all defendants] to distribute products that infringe [plaintiff's] copyrights." *Id.* at *3. The court stated: "This case is distinguishable as it is not a case where [plaintiff] sued [d]efendants independently with no factual commonality or related activities. The connecting party that satisfies the 'same transaction, occurrence or series of occurrences' is [the reseller]." *Id.* So, too, here, where all Reseller Defendants connect back to Defendant Pearce and the stolen, Internal Use Licenses, as does Metroline. The same is true where Telcom relates directly to Atlas' sales of counterfeit products, as Atlas identified Telcom as its source. *See also Bravado Int'l Grp. Merch. Servs. v. Cha*, No. CV 09-9066 PSG (CWX), 2010 WL 2650432, at *5 (C.D. Cal. June 30, 2010) (finding defendants who were in the same distribution chain were properly joined in copyright and trademark infringement action); *N. Face Apparel Corp. v. Dahan*, No. CV1304821-MMM-MANX, 2014 WL 12596716, at *6 (C.D. Cal. Mar. 14, 2014) ("Where there is some factual commonality among infringement claims, however, this suffices to satisfy the 'same transaction, occurrence or series of transactions or occurrences' test. . . . claims that arise out of a systematic pattern of events and have a very definite logical relationship meet the 'same transaction' requirement.") (*citing Brighton* at *5).

In short, Metroline and Telcom are both part of the infringing distribution chains with the current Defendants and are jointly and severally liable with the current Defendants on the

respective claims, making their joinder here perfectly appropriate under Ninth Circuit law.

## V.  CONCLUSION

For the foregoing reasons, Avaya respectfully requests that the Court grant it leave to amend and file the Third Amended Complaint.

DATED: December 31, 2020         SIDEMAN & BANCROFT LLP

By: /s/ Lyndsey C. Heaton
Lyndsey C. Heaton
Attorneys for Plaintiff
AVAYA INC.