1  RICHARD J. NELSON (State Bar No. 141658)
   E-Mail:      *rnelson@sideman.com*
2  ZACHARY J. ALINDER (State Bar No. 209009)
   E-Mail:      *zalinder@sideman.com*
3  LYNDSEY C. HEATON (State Bar No. 262883)
   E-Mail:      *lheaton@sideman.com*
4  SIDEMAN & BANCROFT LLP
   One Embarcadero Center, Twenty-Second Floor
5  San Francisco, California 94111-3711
   Telephone:      (415) 392-1960
6  Facsimile:      (415) 392-0827

7  Attorneys for Plaintiff
   AVAYA INC.
8

9              UNITED STATES DISTRICT COURT

10           NORTHERN DISTRICT OF CALIFORNIA

11              SAN FRANCISCO DIVISION

12  AVAYA INC., a Delaware corporation,        CASE NO. 3:19-cv-00565-SI

13              Plaintiff,                      THIRD AMENDED COMPLAINT FOR
                                               DAMAGES AND INJUNCTIVE RELIEF
14       v.                                    FOR:

15  RAYMOND BRADLEY PEARCE, a/k/a          1.  **FEDERAL TRADEMARK
    "BRAD" PEARCE, an individual; JASON        INFRINGEMENT AND
16  HINES, an individual and doing business as     COUNTERFEITING, 15 U.S.C. § 1114;**
    DBSI and TELBEST.COM; DEDICATED        2.  **FEDERAL UNFAIR COMPETITION,
17  BUSINESS SYSTEMS INTERNATIONAL            15 U.S.C. § 1125;**
    LLC, doing business as DBSI.NET, a New   3.  **FEDERAL DIRECT AND INDIRECT
18  Jersey limited liability company; ATLAS      COPYRIGHT INFRINGEMENT, 17
    SYSTEMS, INC., doing business as            U.S.C. §§ 501 *et seq.*;**
19  ATLASPHONES.COM and "THE                4.  **VIOLATIONS OF THE DIGITAL
    TELECOM DEALER," a Michigan              MILLENNIUM COPYRIGHT ACT, 17
20  corporation; US VOICE AND DATA, LLC,       U.S.C. §§ 1201. *et seq.* ;**
    f/k/a TRI-STATE COMMUNICATION        5.  **VIOLATIONS OF THE COMPUTER
21  SERVICES LLC, a New Jersey limited         FRAUD AND ABUSE ACT, 18 U.S.C. §§
    liability company; SHARKFISH CORP., an     1030, *et seq.* ;**
22  Oklahoma corporation; FEATURECOM INC.,  6.  **VIOLATIONS OF THE COMPUTER
    a Canadian corporation; STEVE GERACI, an   DATA ACCESS AND FRAUD ACT,
23  individual; TOM CONROY, an individual;      CAL. PENAL CODE § 502;**
    METROLINE INC., a Michigan corporation;  7.  **VIOLATIONS OF 18 U.S.C. § 2318; and,**
    TELCOM INTERNATIONAL TRADING       8.  **UNJUST ENRICHMENT/
24  PTE. LTD. a Singapore business entity; and,     RESTITUTION/CONSTRUCTIVE
    DOES 11 through 50, inclusive,             TRUST**
25
                Defendants.
26                                          **Demand for Jury Trial**

27

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   Plaintiff AVAYA INC. ("Avaya" or "Plaintiff") hereby complains and alleges against

2   Defendants RAYMOND BRADLEY PEARCE, a/k/a "BRAD" PEARCE ("Pearce"); JASON

3   HINES, for himself and doing business as DBSI and TELBEST.COM ("Hines"); DEDICATED

4   BUSINESS SYSTEMS INTERNATIONAL LLC, doing business as DBSI.NET ("DBSI");

5   ATLAS SYSTEMS, INC. doing business as ATLASPHONES.COM and "THE TELECOM

6   DEALER" ("Atlas"); US VOICE AND DATA, LLC, f/k/a TRI-STATE COMMUNICATION

7   SERVICES LLC ("Tri-State"); SHARKFISH CORP. ("Sharkfish"); FEATURECOM INC.

8   ("Featurecom"); STEVE GERACI ("Geraci"); TOM CONROY ("Conroy"); METROLINE INC.

9   ("Metroline"); TELCOM INTERNATIONAL TRADING PTE. LTD. ("Telcom")[1]; and, DOES 11

10  through 50, inclusive (collectively "Defendants"), as follows.

11  **INTRODUCTION**

12  1.   For years, Defendants have been perpetrating a massive illegal software piracy

13  operation, which resulted in the theft and subsequent resale of thousands of unauthorized Avaya

14  Internal Use Software Licenses ("Internal Use Licenses") to end customers duped into buying

15  pirated software, rather than buying genuine Avaya software licenses through authorized Avaya

16  distribution channels.

17  2.   Long-term Avaya employee Defendant Pearce, in collusion with former Avaya

18  authorized reseller Defendant Hines, willfully resold and distributed, and facilitated the further

19  distribution and resale of, thousands of Avaya Internal Use Licenses – worth millions of dollars –

20  all without Avaya's authorization, knowledge, or consent.  The Internal Use Licenses were created

21  by Pearce by entering Avaya's computer system using his employee account, as well as Avaya

22  employee accounts hijacked by Pearce that had been doctored to conceal the scheme and to avoid

23  internal controls.  Pearce and Hines then covertly distributed the stolen Internal Use Licenses

24

25  _____

26  [1] As alleged in more detail below, Telcom at least trafficked in over a thousand counterfeit Avaya-
branded products, however, to ensure that Avaya's allegations are clear, at this point, Avaya's

27  allegations against Telcom do not include stolen and/or infringing software license sales, like for
the other Defendants.

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

through their own companies, as well as through numerous other resellers, including at least Defendants Atlas, Featurecom, Geraci, Conroy, and Metroline.

3.      Adding to the injury, Defendant Atlas has been caught not only offering for sale and distributing these pirated Internal Use Licenses, but in addition, reselling over a thousand counterfeit "Avaya" branded phones, as well as apparently genuine Avaya phones – marketed and sold as "new" – that were repackaged and resold with counterfeit labels that closely mimicked genuine Avaya factory labels and bore counterfeit Avaya trademarks.  Atlas has identified newly-added Defendant Telcom as the source for the counterfeit "Avaya" branded phones that Avaya has uncovered thus far.

4.      Defendants' unlawful schemes, as alleged in more detail below, have not only caused Avaya significant monetary damages, but also they have significantly undermined Avaya's brand, goodwill, and reputation with customers.  Thousands of end customers have been duped into believing they were receiving a genuine high-quality Avaya product, rather than a counterfeit and otherwise infringing product, and/or a lawful software license, rather than pirated software license that conveys no actual license rights at all to the end customer.

5.      Of course, none of these unlawful and infringing products and software licenses should ever have been sold/resold at all, nor should any be sold/resold in the future.  Accordingly, Avaya brings this Action to put a stop to Defendants' unlawful and infringing conduct, to enjoin further unlawful and infringing conduct, and to recover full damages for the significant harm they have caused.

## PARTIES

6.      Avaya is, and at all times mentioned herein was, a Delaware corporation, with its principal place of business at 4655 Great America Parkway, Santa Clara, California.  Avaya owns the trademarks that are used in marketing and selling Avaya-branded products and the copyrights in the Avaya software infringed by Defendants.

7.      Avaya is informed and believes, and thereon alleges, that Defendant Pearce is an Oklahoma resident, residing in Tuttle, Oklahoma.  Defendant Pearce was an employee of Avaya from 2000 to 2018, working in an Avaya call center in Oklahoma City, Oklahoma.  Avaya is

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   further informed and believes, and thereon alleges, that Defendant Pearce did business through

2   one or more eBay accounts, as well as through Defendant Sharkfish, an Oklahoma corporation,

3   with a business address of 310 West Main St., Tuttle, Oklahoma, including business related to the

4   unlawful conduct alleged herein.  Defendant Sharkfish was previously identified as DOE

5   Defendant No. 1 in the original Complaint in this Action.  Avaya is further informed and believes,

6   and thereon alleges, that Defendant Pearce at various points in time used the alias "Terri Jenkins"

7   or "TJ" in performing the unlawful activities alleged further herein.

8         8.         Avaya is informed and believes, and thereon alleges, that Defendant Hines is a

9   New Jersey resident, residing in Caldwell, New Jersey.  Avaya is informed and believes, and

10  thereon alleges, that Defendant Hines is the owner and operator of Defendant Dedicated Business

11  Systems International LLC, doing business as www.dbsi.net and also known as "DBSI".  Avaya is

12  informed and believes, and thereon alleges, that Defendant DBSI is a New Jersey Limited

13  Liability Company with its principal place of business in Fairfield, New Jersey and offices in New

14  York City.  Avaya is further informed and believes, and thereon alleges, that Defendant Hines has

15  done, and continues to do, business under the fictitious business names of TelBest (TelBest.com),

16  Direct Business Systems International LLC, Empire Telephone LLC, and US Tel, LLC.  A

17  number of these fictitious business names appear to have been at one time registered with New

18  Jersey or New York by Defendant Hines, although none of these business names currently appears

19  to be an active business entity in New York or New Jersey.  Avaya is further informed and

20  believes, and thereon alleges, that Defendant Hines at various points in time used one or more

21  aliases, including "Chad Johnson," in performing the unlawful activities alleged further herein.

22        9.         Avaya is informed and believes, and thereon alleges, that Defendant Tri-State was a

23  New Jersey limited liability company with its principal place of business in Fairfield, NJ.

24  Defendant Tri-State was previously identified as DOE Defendant No. 2 in the original Complaint.

25  Avaya is informed and believes, and thereon alleges, that Defendant Hines is the primary

26  individual conducting business through Defendant Tri-State, including using the alias "Chad

27  Johnson."  Avaya is informed and believes, and thereon alleges, that Defendant Tri-State has

28  recently changed its name, and therefore continues to do business under the current business name

THIRD AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1    of US Voice and Data, LLC.

2        10.    Avaya is informed and believes, and thereon alleges, that Defendant Atlas is a

3    Michigan corporation, with its principal place of business in Auburn Hills, Michigan, with an

4    online store at atlasphones.com.  Avaya is informed and believes, and thereon alleges, that

5    Defendant Atlas also operates an eBay store using the dba "The Telecom Dealer," under the eBay

6    seller name thetelecomdealer, and leveraged the eBay platform, which is located in San Jose,

7    California, in the course of its business including the infringing business alleged in this Complaint.

8        11.    Avaya is informed and believes, and thereon alleges, that former Defendant

9    Telephone Man is a Florida limited liability company, with its principal place of business in Plant

10   City, Florida, with an online store at telephonemanofamerica.com.  Avaya is informed and

11   believes, and thereon alleges, that Defendant Telephone Man operates an eBay store, under the

12   seller name telephonemanofamerica, and leveraged the eBay platform, which is located in San

13   Jose, California, in the course of its business including the infringing business alleged in this

14   Complaint.  Avaya is informed and believes, and thereon alleges, that Defendant Kelly Petry is the

15   owner and operator of Telephone Man, and in that capacity authorized, directed, and participated

16   in the Telephone Man's infringements, and therefore when Avaya alleges conduct by Telephone

17   Man below, that includes Defendant Petry.  Defendant Petry was previously identified as DOE

18   Defendant No. 3 in the original and amended Complaints.

19       12.    Avaya is informed and believes, and thereon alleges, that former Defendant

20   Telecom Spot is a Texas business entity, with an online store at thetelecomspot.com, and with its

21   principal place of business in Austin, Texas.

22       13.    Avaya is informed and believes, and thereon alleges, that Defendant Featurecom is

23   a Canadian corporation with its principal place of business in Ontario, Canada, and with United

24   States offices in at least Pompano Beach, Florida.  Defendant Featurecom was previously

25   identified as DOE Defendant No. 4 in the original and amended Complaints.  Avaya is informed

26   and believes, and thereon alleges, that Defendant Steve Geraci is the President of Featurecom, and

27   in that capacity authorized, directed and participated in Featurecom's infringements, and therefore

28   when Avaya alleges conduct by Featurecom below, that includes Defendant Geraci.  Defendant

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   Geraci was previously identified as DOE Defendant No. 5 in the original and amended

2   Complaints.

3       14.     Avaya is informed and believes, and thereon alleges, that Defendant Conroy is an

4   individual, residing in San Diego, California.  Avaya is informed and believes, and thereon

5   alleges, that Defendant Conroy is an individual, residing in San Diego County, California.  Avaya

6   is informed and believes, and thereon alleges, that Defendant Conroy does business under the

7   fictitious business names Avaya Business Resale, AB Resale, www.abrnow.com, or ABR.

8   Defendant Conroy was previously identified as DOE Defendant No. 6 in the original and amended

9   Complaints.

10      15.     Avaya is informed and believes, and thereon alleges, that former Defendant Drew

11  Telecom is a Michigan corporation with its principal place of business in Plainwell, Michigan.

12  Former Defendant Drew Telecom was previously identified as DOE Defendant No. 7 in the

13  original and amended Complaints.  Avaya is informed and believes, and thereon alleges, that

14  former Defendant Andrew Roach is the President of Drew Telecom, and in that capacity

15  authorized, directed and participated in Drew Telecom's infringements, and therefore when Avaya

16  alleges conduct by Drew Telecom below, that includes Defendant Roach.  Former Defendant

17  Roach was previously identified as DOE Defendant No. 8 in the original and amended

18  Complaints.

19      16.     Avaya is informed and believes, and thereon alleges, that Defendant Metroline is a

20  Michigan corporation, with its principal place of business in Troy, Michigan, with an online store

21  at www.metrolinedirect.com.  Defendant Metroline was previously identified as DOE Defendant

22  No. 9 in the original and amended Complaints.

23      17.     Avaya is informed and believes, and thereon alleges, that Defendant Telcom is a

24  Singapore business entity, with its principal place of business in Singapore, with an active online

25  store at www.telcom-int.com including an online shop that markets "Avaya" branded products for

26  sale, including purported "new" Avaya branded phones (*see, e.g.,* http://telcom-

27  int.com/product/new-avaya-9608g-ip-voip-gigabit-deskphone-700505424-with-1-year-warranty/).

28  Avaya is informed and believes, and thereon alleges, that Defendant Telcom's counterfeit

"Avaya" branded phones sales were sold in such large quantities that it was foreseeable and intended that such phones would be resold nationwide, including into California, and indeed, some of the returned counterfeit phones at issue in this Action were returned from California customer locations.  Further, Defendant Telcom maintains a Facebook page, which is located in this District, which Telcom uses to advertise and promote its products to customers, including those in this District. Defendant Telcom was previously identified as DOE Defendant No. 10 in the original and amended Complaints.

18.     The true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants named herein as DOES 11 through 50, inclusive, are unknown to Avaya who, therefore, sues said Defendants by such fictitious names.  Avaya will amend this Complaint to reflect the true names and capacities of these DOE Defendants when the same shall have been fully and finally ascertained.

19.     Avaya is informed and believes, and thereon alleges, that each of the Defendants designated herein as a DOE is legally responsible, in some manner, for the events and happenings herein referred to, and legally caused damages to Avaya as herein alleged.

20.     Avaya is informed and believes, and thereon alleges, that at all times relevant to this action, each Defendant, including those fictitiously named Defendants, was the agent, servant, employee, partner, joint venturer, accomplice, conspirator, alter ego or surety of the other Defendants and was acting within the scope of that agency, employment, partnership, venture, conspiracy, or suretyship with the knowledge and consent or ratification of each of the other Defendants in doing the unlawful activities alleged in this Complaint.

## JURISDICTION

21.     This is an Action founded upon violations of Federal trademark and copyright laws, pursuant to 15 U.S.C. §§ 1051, *et seq.*, 17 U.S.C. §§ 501, *et seq.*, and 17 U.S.C. §§ 1201, *et seq.* In addition, this Action is founded upon violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, as well as violations of 18 U.S.C. § 2318.  This Court has original subject matter jurisdiction over this Action pursuant to 28 U.S.C. §§ 1331 and 1338(a)-(b), and 15 U.S.C. § 1121.  This Court has supplemental jurisdiction over Avaya's state law claims for relief pursuant

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1    to 28 U.S.C. §§ 1338(b) and 1367 because the claims are so related to Avaya's claims under

2    Federal law that they form part of the same case or controversy and derive from a common

3    nucleus of operative facts.

4         22.    This Court has personal jurisdiction over Defendants because each Defendant, in

5    participating in the scheme to create and/or distribute the stolen Internal Use Licenses, has

6    willfully infringed intellectual property rights of Avaya, a known forum resident, including by

7    trafficking in pirated Avaya software and otherwise causing tortious injury to Avaya, including to

8    its trademarks and copyrights, within California, and within this District in particular.  Defendants

9    did so with knowledge that Avaya was located in California.  Further, Defendants have performed

10   intentional acts expressly aimed at Avaya in this forum and thereby caused damage that they knew

11   would be suffered by Avaya in this forum.  In addition, Defendants (other than Telcom) have

12   marketed, advertised, and offered infringing Avaya software licenses for sale into California and,

13   upon information and belief, transacted other business within California specifically related to the

14   infringing distribution scheme.  Defendants have also misrepresented the authentic nature of the

15   counterfeit and/or otherwise infringing "Avaya" products to residents of California, including

16   within this District.  Defendants engaged in the unlawful conduct alleged in this Complaint, with

17   knowledge that Avaya is located in California.  Further, the reseller Defendants, including, but not

18   limited to, Metroline specifically distributed software infringing Avaya's copyrights and other

19   intellectual property rights in California.

20        23.    Further as to Defendants Hines, DBSI, Tri-State, and Featurecom, they are former

21   Avaya partners, and were well aware that the effects of their unlawful conduct would be directed

22   at and suffered by Avaya in California, and knew that Avaya's principal place of business is

23   located in Santa Clara, California.  Indeed, in accessing Avaya's Avaya Direct International

24   ("ADI") software license portal, numerous Defendants, including specifically Hines, and DBSI

25   and Tri-State through Hines, agreed to terms of use, which required a click to accept on the same

26   page as the link to Avaya's terms of use, which explicitly set forth exclusive jurisdiction in the

27   Northern District of California and further made clear that Avaya is headquartered in Santa Clara,

28   California.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

Case No. 3:19-cv-00565-SI
THIRD AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

## VENUE

24.     Venue for this action properly lies in the Northern District of California pursuant to 28 U.S.C. § 1391(b)(2) because Defendants committed acts here in furtherance of their illegal business operations, a substantial part of the events giving rise to the claim occurred in this District, and a substantial part of the property that is the subject of this action is located within this District.  Further, Defendants have either sold or offered to sell the infringing software licenses at issue in this Action into this District and/or knowing such software would be resold into this District.  Further, Defendants' acts of infringement are likely to have caused, and are likely to continue to cause, consumer confusion within this District.  Further, venue is also proper in this District under 28 U.S.C. § 1400(a) because Defendants are subject to personal jurisdiction here due to having performed intentional acts expressly aimed at the forum and thereby caused damage that they knew would be suffered by Avaya in this District.  Further, in accessing Avaya's ADI software license portal, numerous Defendants, including specifically Hines, and DBSI and Tri-State through Hines, explicitly agreed to Northern District of California as a proper forum for disputes between the parties.

## INTRA-DISTRICT ASSIGNMENT

25.     In accordance with LR 3-2(c), this Action is properly assigned on a district-wide basis because it relates to Intellectual Property.

## FACTUAL ALLEGATIONS RELATING TO AVAYA AND ITS IP

26.     Avaya is a subsidiary of Avaya Holdings Corporation, a publicly traded U.S.-based multinational business communications company headquartered in Santa Clara, California.  Avaya was spun off from Lucent Technologies in 2000.  Avaya provides an extensive portfolio of hardware, software, and services for contact center and unified communications, such as voice and video calling, audio conferencing, and mobility solutions.  Avaya provides communications solutions to a broad range of companies, from small businesses to large multinational enterprises and government organizations.  As of 2018, Avaya had a presence in approximately 180 countries worldwide and has in the past three fiscal years conducted business with more than 90% of the Fortune 100 organizations.

27.     As of the filing of the prior amended complaint, Avaya's annual sales were approximately $3 billion and it employed approximately 8,100 employees, of whom nearly 2,800 are located in the United States.  Avaya sells its products and services directly to customers and indirectly through thousands of contractually-authorized channel partners, which account for approximately 70% of total product revenue.  For indirect sales through partners, Avaya utilizes a two-tiered distribution structure wherein Avaya sells directly to a relatively small number of authorized distributors that are required to sell only to contractually-authorized resellers.  Those resellers are contractually obligated to sell directly to end-user customers.

28.     Avaya products and services include software, hardware, professional and support services, and cloud services.  Among Avaya's product offerings, Avaya offers a product called IP Office ("IPO"), a scalable mid-market and small business telephone system which supports anywhere from five to thousands of users at up to 150 different physical locations.  Currently, there are five "editions" of IPO, each of which entail increasing features and capabilities.  All editions require per-endpoint software licensing, meaning each phone or computer on the system must be licensed in the IPO software.  Additional features, such as voicemail, require additional software licenses on a per-endpoint basis.  Thus, each individual phone on a customer's system may be licensed to several feature sets and enabled by multiple software licenses.  These IPO software licenses are sold by Avaya and its authorized partners, and then distributed to the licensed end users through unique software license keys.

29.     Avaya has developed a strong name and reputation within the trade and among members of the consuming public as a leading provider of contact center and unified communications solutions, including hardware and software of the highest quality.  Avaya has invested substantial effort and resources to develop and promote public recognition of the Avaya trade name and of the family of Avaya-related marks.  Avaya has used the family of Avaya trademarks to identify goods and services as being genuine Avaya products, and the Avaya marks and name are well-recognized signifiers of Avaya's high quality products, software, and related services (the Avaya marks and name are hereinafter referred to as "Avaya Marks").

30.     Avaya has caused several Avaya Marks to be registered on the Principal Register of

the U.S. Patent and Trademark Office in connection with a range of telecommunications, computer hardware, and software products and services, and Avaya owns all rights, title, and interest in numerous federal trademark registrations, including at least:

| Mark | Registration Number | Registration Date |
|---|---|---|
| AVAYA | 2,697,002 | March 18, 2003 |
| AVAYA | 2,696,985 | March 18, 2003 |

31.     Avaya has also expended significant resources and effort to develop and promote public recognition of the Avaya trade name and the family of Avaya-related marks throughout the world, in part by placing Avaya Products and Avaya Marks in its advertising and promotional materials, which reach global consumers through a variety of media, including television, radio, newspapers, magazines, billboards, social media, and the internet.

32.     Avaya has taken substantial steps and expended significant resources to research and develop strict quality-control standards for all of its products to ensure that products, software, and services bearing Avaya Marks continue to be of the highest quality.

33.     As a result of Avaya's extensive advertising and promotional efforts and its continuous use of its core Avaya Marks for more than 15 years, Avaya has attained one of the highest levels of brand recognition.  As a result of Avaya's longstanding and widespread use and promotion of Avaya Marks, Avaya's customers worldwide have come to rely upon Avaya Marks to identify Avaya's high-quality goods and services, including software.  Many of Avaya's products are purchased by the U.S. Government, including branches of the military, and by other industries, for use in critical applications.

34.     Avaya has also expended significant resources and effort to research and develop world-class software products that enable, enhance, and interoperate with its high-quality hardware.  Avaya has caused numerous Avaya software copyrights to be registered with the U.S. Copyright Office in connection with its IP Office products, including but not limited to:

| Title | Copyright Number | Date |
|---|---|---|
| Avaya IP Office R9.0 | TX0008595990 | 2013 |
| Avaya IP Office R9.1 | TX0008592908 | 2014 |

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

| Avaya IP Office R10.0 | TX0008592913 | 2016 |
| Avaya IP Office R10.1 | TX0008660283 | 2017 |
| Avaya IP Office R11.0 | TX0008655667 | 2018 |

35.     The above software copyright registrations include the copyrighted software covering the Avaya IP Office software licenses referred to in the Complaint above and below.

36.     In addition, Avaya has instituted certain technological measures to control access to its copyright-protected software, including the software identified above.  One of those technological measures is the use of software license keys that control access to the Avaya software, including but not limited to the registered software listed above.

## FURTHER FACTUAL ALLEGATIONS RELATED TO THE UNLAWFUL SCHEME

37.     Avaya has recently uncovered a large scale unlawful conspiracy, which generated millions of dollars of profit at Avaya's expense based upon the creation and distribution of thousands of pirated Avaya Internal Use Only, copyright-protected software licenses.

38.     Avaya does not sell its software at all, and certainly does not authorize third parties to sell its software on third-party marketplaces.  Instead, Avaya offers its software to be licensed through authorized channels, not including third-party marketplaces.  Further, all Avaya software is subject to an End User License Agreement ("EULA"), which licenses that software to a specific end user for use only by that end user and is generally non-transferrable.  Avaya's EULA is attached hereto as Exhibit A and incorporated into this Complaint.  Avaya is further informed and believes, and thereon alleges, that certain Defendants, including at least Atlas, Featurecom, and Metroline, have been purporting to resell, further transfer, and distribute Avaya software licenses, obtained either from a prior end user, another reseller, or an authorized Avaya partner, none of whom have any license rights to transfer an Avaya software license to a third party reseller for further distribution.  The further resale, transfer, and distribution of such software licenses by these Defendants violates Avaya's EULA, and in doing so, further infringes Avaya's copyrights.

39.  Adding further injury, Defendants have also been selling stolen Avaya software licenses in competition with authorized and licensed Avaya software and trading off of Avaya's trademarks to do so, by misrepresenting the source of the software licenses as being "new"

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

software from Avaya.  Thus, the use of the Avaya marks by Defendants was not intended to describe the product, but rather to make it appear that the software license was sanctioned, endorsed, and authorized for distribution and resale by Avaya:





LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

40.     The stolen Avaya software licenses that Defendants (other than Defendant Telcom) were distributing illegally as "new," genuine and authorized software were discovered to primarily be Internal Use Licenses that Defendant Pearce stole from Avaya by abusing his own internal access to Avaya's systems and further by using multiple, hijacked employee accounts.  Pearce's primary job responsibility at Avaya was to assist with the resolution of customer support issues, which included generation of Internal Use Licenses for various administrative purposes. Legitimate Internal Use Licenses are sometimes needed to support Avaya's customers who have properly licensed software from Avaya.  From a functionality perspective, Internal Use Licenses are no different from the software licenses delivered to Avaya's paying customers; however, Internal Use Licenses are billed to Avaya at no cost, rather than the sale price to Avaya's distributor or end-customer, as would otherwise occur.

41.     For years, Pearce generated Internal Use Licenses for thousands of Avaya customer systems, of which – Avaya is informed and believes, and thereon alleges –  included millions of dollars in stolen Internal Use Licenses distributed without Avaya's authorization, as there is no associated revenue, no related customer orders, and no logical business explanation for the magnitude of Pearce's software license generation.  Through purchasing sample software licenses resold by certain Defendants, Avaya was able to track the generation of these infringing and illegal software licenses back to Pearce.  To accomplish this theft, Pearce accessed the Avaya software license generation system far beyond his authorization and in completely unauthorized ways, including by issuing licenses himself for unauthorized sale to third parties as well as by hijacking accounts tied to former employees and/or contractors and then activating, controlling, and leveraging those additional accounts in order to steal even more software licenses and avoid internal controls Pearce knew were in place.

42.     Avaya is further informed and believes, and thereon alleges, that Pearce used Defendant Sharkfish, one or more eBay seller names, and the aliases "Terri Jenkins" and "TJ," in the course of distributing these stolen Internal Use Licenses and to funnel the ill-gotten gains back to himself.

43.     Defendant Pearce was then in contact with at least Hines to distribute the stolen

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   Avaya Internal Use Licenses.  Defendant Hines would then access, beyond his authorization, the

2   ADI system in order to download the Internal Use Licenses generated by Pearce and distribute

3   them, or facilitate their distribution, to end customers or other third party resellers, including at

4   least Defendants DBSI, Tri-State, Atlas, Featurecom, Geraci, Conroy, Metroline, and former

5   Defendants Telecom Spot, Telephone Man, and Drew Telecom.

6          44.    Defendant DBSI, run by Hines, was previously an authorized Avaya reseller;

7   however, DBSI's reseller agreement was terminated by Avaya in 2013.  This termination placed

8   DBSI and Hines on a "removed reseller" list and de-authorized partner access to Avaya's license

9   key systems, including ADI.  However, even though Defendants DBSI and Hines knew they no

10  longer had partner authorization from Avaya for Avaya's license key systems, they continued to

11  access Avaya's software license portals, including ADI, beyond their authorization in order to

12  distribute the stolen Internal Use Licenses.  In addition to this access beyond authorization, DBSI

13  and Hines falsely claimed on their website, DBSI.net, to be an Avaya "Authorized Dealer," and

14  specifically used Avaya's Marks to further the false claim of endorsement and authorization by

15  Avaya:

16  

25         45.    Defendant Hines, through his companies DBSI, TelBest, and Defendant Tri-State,

26  as well as through numerous other online resellers, including at least Defendants Atlas, Metroline,

27  Featurecom, Geraci, and Conroy, and former Defendants Telecom Spot, Telephone Man, and

28  Drew Telecom, then each distributed and/or facilitated the distribution of these pirated Internal

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   Use Licenses to thousands of end user customers, in exchange for millions of dollars.  In order to

2   effectuate distribution of the pirated Internal Use Licenses to end customers, Defendants Hines

3   and DBSI accessed Avaya's ADI system – beyond their authorization – using log-in credentials,

4   that had been enabled by an authorized Distributor.  Avaya is also informed and believes, and

5   thereon alleges, that Defendants Hines and DBSI shared their ADI log-in credentials with other

6   resellers and customers in order to allow them to quickly process orders of the pirated Internal Use

7   Licenses for end customers.  Logging into the ADI system, for example, requires a user to click-

8   to-accept, and includes a link to the ADI terms of use on the same page confirming the accessing

9   party's acceptance such terms.  The "click-to-accept" languages also requires the accessing party

10  to agree that it has a valid contract, *e.g.* a business partner agreement, with Avaya or an authorized

11  Avaya Distributor.  Further, it appears that while Hines and DBSI are located in New Jersey, in

12  furtherance of the scheme described in this Complaint, their login credentials were also leveraged

13  by individuals or entities located in several other states and countries in order to download stolen

14  Internal Use Licenses created by Pearce, including but not limited to Auburn Hills, Michigan,

15  Austin, Texas, and Tampa/Largo, Florida (which is adjacent to Plant City, Florida), and believed

16  to have been used by, at a minimum, Defendants Atlas and Metroline.

17        46.      Test buys and reviews of the Defendants' websites and online storefronts

18  confirmed that Defendants Hines, through his companies DBSI, TelBest, and Tri-State, as well as,

19  at least, Defendants Atlas and former Defendants Telecom Spot and Telephone Man all offered

20  these pirated Internal Use Licenses for sale online, representing that the corresponding software

21  was "new" and genuine Avaya software, which was fully licensed and authorized by Avaya.  Such

22  representations in connection with the resale of these pirated Internal Use Licenses are false and

23  misleading, as pirated software licenses do not convey any actual license rights to the purchaser.

24        47.      Sales data related to Defendant Pearce has further revealed that Defendants

25  DBSI/Hines, Featurecom, Geraci, and Conroy, and at least former Defendants Drew Telecom and

26  Telephone Man each paid Pearce substantial sums of money directly in exchange for the stolen,

27  Internal Use Licenses, which Avaya is informed and believes, such Defendants then turned around

28  and resold to other resellers and/or unwitting end customers.

48.     Meanwhile, the end customers who purchased the infringing software from Defendants are now unwittingly also infringing Avaya's copyrights by running the Avaya software without any valid license.  Avaya is further harmed by sales of such unlicensed software, as Avaya then must support these customers regarding software that they never actually licensed from Avaya.

49.     After the sale had been consummated, Defendants continued to represent that such Internal Use Licenses were valid and authorized by Avaya, including by, for example, using Avaya's trade name and Avaya Marks to imply endorsement and/or authorization by Avaya.  For example, the following was included in an email from former Defendant Telecom Spot distributing the Avaya software:

**AVAYA**

Excel spreadsheet and macro to reformat downloaded Licence Key files for printing in a more readable format.

Please save the contents of the Zip file to a directory first
Open the File with the name starting as "RUN"
Click the Button "Create All Views"

This will create additional work sheets as follows:

All keys - all data from the download is presented with column filters to allow selection of data if required
Single sheet print - is a printable list that will print each different serial number or certificate on a separate page, use 'file/print'
nnnnnnn.csv - IP Office Manager import format.  One sheet will be created for each serial number and an nnnnnnn.csv file saved to disk.  Rename to 'keys.txt' for import via IP Office SD card.

50.     In addition to leveraging access to the "legacy" DBSI log-in credentials for the ADI system, Avaya is informed and believes, and thereon alleges, that Defendant Hines took further steps to circumvent Avaya's access controls by creating one or more fake identities, including "Chad Johnson," and a separate company, Defendant Tri-State, in order to further facilitate the scheme to access and distribute the pirated Internal Use Licenses.

51.     Tri-State became an authorized Avaya partner partway through Defendants' scheme, on May 13, 2014.  Unbeknownst to Avaya at the time, and hereon alleged upon information and belief, Tri-State is a company created either by Defendant Hines or at his direction for the primary purpose of allowing Hines additional access to Avaya's ADI system and Product Licensing and Delivery System ("PLDS") in order to distribute the stolen Internal Use Licenses.  The PLDS system allows a user to "upgrade" older versions of Avaya licenses that have been previously downloaded through the ADI system.  While Hines, through DBSI, had retained some access to Avaya's PLDS system, DBSI/Hines could not order upgrades for the stolen

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   Internal Use Licenses after Avaya had terminated DBSI as an Avaya partner.  Avaya is informed

2   and believes, and thereon alleges, that by leveraging Tri-State's partner access to PLDS,

3   Defendants Hines/DBSI were able to, for example, download an older "R9" license from ADI (a

4   pirated Internal Use License that had been stolen and created by Pearce) and upgrade it to a newer

5   ("R10" or "R11") version of the software through PLDS in order to meet an end customer's needs.

6   This allowed Defendants Hines, DBSI, and Tri-State to obtain "R10" and "R11" licenses at little

7   or no cost as a result of abusing the PLDS upgrade process with stolen Internal Use Licenses.

8          52.     Defendants Hines, DBSI and Tri-State all agreed to abide by Avaya's Terms of Use

9   of its systems each time they logged on to ADI and PLDS.  These Terms of Use provide that

10   access to and use of Avaya's websites are subject to the Terms of Use and that each user agrees

11   not to use Avaya's websites "in a manner that is actually or potentially false, inaccurate,

12   misleading . . . [or] harmful" and that the user will not, among other things: "misrepresent an

13   affiliation with, or otherwise impersonate, any person or organization; [or] download a file or

14   software . . . that [the user] know[s], or [has] reason to believe, cannot be distributed legally over

15   the [w]ebsite; [or] take any action to circumvent or attempt to circumvent the security and access

16   control measures of the [w]ebsite; [or] "distribute, reproduce, duplicate, copy, transfer, modify,

17   license, sell, trade, or resell any content, unless Avaya expressly agrees otherwise in writing." *See*

18   Avaya ADI Terms of Use as of March 18, 2016.  The Terms of Use also explicitly identify

19   Avaya's headquarters in Santa Clara, California.  In logging in to ADI, Hines, DBSI, and Tri-State

20   also agreed "that the terms and conditions of [their] contract with Avaya or Avaya Distributor (as

21   applicable) shall govern this transaction."  Further, any other Defendant leveraging Hines'

22   credentials to access Avaya's systems and download stolen Internal Use Licenses, including, on

23   information and belief, Defendants Atlas and Metroline, would have had to agree to be bound by

24   these Terms of Use as well.

25   / / / /

26   / / / /

27   / / / /

28   / / / /

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

53.     In addition to the above, an employee of Tri-State who went by the name "Chad Johnson" used his ADI and PLDS credentials to download and upgrade pirated Internal Use Licenses created by Pearce on numerous occasions.  "Chad Johnson" also used his PLDS credentials to upgrade stolen Internal Use Licenses that had been initially downloaded by Hines at DBSI.  Hines has now admitted that "Chad Johnson" is a false name used by Hines, and that Hines was the individual in control of "Chad Johnson's" ADI and PLDS accounts.  Hines has also admitted that DBSI and Tri-State share an office at 165 Passaic Avenue in Fairfield, New Jersey:



54.     Hines has also admitted that he called in to Avaya's customer support line on at least two separate occasions, once claiming to be "Chad Johnson" of Tri-State and another time claiming to be "Justin Albaum," a purported employee of Tri-State, who also had Avaya system credentials under Tri-State's account and who accepted the Avaya reseller agreement on behalf of Tri-State.  Tri-State's reseller agreement with Avaya was terminated for cause on February 14, 2019.

55.     Defendants Pearce, Sharkfish, Hines, DBSI, and Tri-State thereby willfully and

1   knowingly infringed Avaya's copyrights and trademarks, and the other reseller defendants,

2   including at least Defendants Atlas, Metroline, Featurecom, Mr. Geraci, and Mr. Conroy either

3   acted willfully and knowingly in supporting this unlawful scheme or with willful blindness and

4   complete disregard for the harm caused to Avaya and its end customers as a result of their direct

5   and substantial involvement in enabling this vast illegal operation and in thereby infringing

6   Avaya's intellectual property.  Defendants are each jointly and severally liable for their direct and

7   substantial involvement in, and actions taken in support of, the alleged infringing distribution

8   chain, and each Defendant profited handsomely for their part in this scheme.  Defendants are also

9   indirectly liable for the infringement related to their downstream customers due to Defendants'

10  conduct alleged above in (i) controlling the distribution of infringing products and directly

11  profiting therefrom, and (ii) knowingly inducing, causing, and/or materially contributing to the

12  infringing activity of their downstream customers.

13  **FURTHER FACTUAL ALLEGATIONS RELATED TO ATLAS PHONES**

14      56.     Avaya has also recently uncovered additional direct infringement and

15  counterfeiting by Defendant Atlas, doing business as Atlasphones.com.  In or about mid-2016,

16  Avaya was informed about a purchase of over a thousand Avaya phone systems by an end

17  customer, which were represented as "new" Avaya IP Phones.  The end customer complained of a

18  high rate of failure of these "Avaya" branded IP Phones.  Upon analysis, over a thousand of these

19  supposedly new "Avaya" IP Phones turned out to be counterfeit, based on the associated data for

20  the phones.  Upon further analysis of a sample of the phones, these counterfeit phones not only

21  had fake serial numbers and fake manufacturing codes, but also had internal components that had

22  been hacked and programmed to bypass internal software controls.  This large sale of counterfeit

23  Avaya products traced back to Atlas, and Atlas has now identified Defendant Telcom as the source

24  of these counterfeit "Avaya" branded IP Phones.  This is but one example of Atlas' counterfeiting,

25  and therefore, Avaya is informed and believes and thereon alleges that, if left unchecked, Atlas

26  will continue to resell counterfeit products with impunity.

27      57.     In addition, Avaya has confirmed through additional test purchases that Atlas is

28  also purchasing gray market Avaya products originally sold overseas in bulk and then repackaging

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

and reselling these previously sold phones as "new."  To convince their end customers that the phones are new and authorized by Avaya, Atlas sells these phones in new packaging that counterfeits the Avaya Marks and tradename and that counterfeits Avaya's genuine factory seals with counterfeit factory labels that closely mimic genuine Avaya factory labels.

### ADDITIONAL FACTUAL ALLEGATIONS RELATED TO CONFUSION

58.     The above unlawful conduct has a high likelihood of causing substantial consumer confusion, and Avaya is informed and believes and thereon alleges, that Defendants' illegal conduct caused significant actual consumer confusion.  In looking at the online sites through which Defendants made their sales, neither those sites nor the customer reviews for Defendants' license sales shows any acknowledgment of the illicit nature of the software licenses being bought and sold, and therefore reflects the confusion by these customers about the lack of authorization and lack of genuineness of these "Avaya" branded software license sales.  Further, as to Defendants Atlas and Telcom, the purchase of thousands of counterfeit phones by end customers similarly reflects a belief by the customer that they were purchasing genuine Avaya phones, and were not aware the products Atlas and Telcom sold were counterfeit.  Avaya is informed and believes, and thereon alleges, that Defendants intentionally and willfully traded on Avaya's Marks, reputation, and goodwill to increase Defendants' sales by causing consumers to believe that their unlawful product and software sales were somehow associated with, affiliated with, and authorized by, Avaya, when they are not, and when the unlawful products and/or software, as alleged in detail above, are non-genuine and/or are counterfeit within the meaning of the Lanham Act.

### AVAYA'S CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

#### Federal Trademark Infringement and Counterfeiting

#### *15 U.S.C. § 1114*

#### (Against All Defendants)

59.     Avaya incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ᴺᴰ FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

60.     The Avaya Marks are valid, protectable trademarks that have been registered as marks on the principal register in the United States Patent and Trademark Office.

61.     Avaya is the owner and registrant of the Avaya Marks.

62.     As described in more detail above, each Defendant has used the Avaya Marks in connection with the marketing, promotion, and sale of goods without Avaya's consent, in a manner that is likely to cause, and has actually caused, confusion and/or mistake, or that has deceived members of the consuming public and/or the trade.   Further, each Defendant has, at a minimum, created or distributed stolen Internal Use Licenses (which are "Avaya" products) without Avaya's authorization, and such goods are not considered "genuine" within the definition of the Lanham Act.  And, as alleged further above, Defendants Atlas and Telcom have counterfeited and/or trafficked in, at a minimum, over a thousand counterfeit "Avaya" branded products.  Indeed, Defendants' counterfeiting and infringing activities are likely to cause and are actually causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin, sponsorship, and quality of Defendants' infringing products, counterfeit packaging, and infringing software licenses.  As of the filing of this Complaint, Avaya is informed and believes that Defendants are continuing to infringe the Avaya Marks unabated as alleged further above.  As such, each Defendant has engaged in both trademark infringement and counterfeiting under 15 U.S.C. § 1114.

63.     Defendants' infringement of the Avaya Marks is willful and their conduct, as alleged herein, constitutes an exceptional case under 15 U.S.C. § 1117.

64.     Avaya has been, and continues to be, damaged by Defendants' infringement, including by suffering irreparable harm through the diminution of trust and goodwill among Avaya consumers and members of the general consuming public and the trade.  Avaya has no adequate remedy at law.  As a result of Defendants' infringement of the Avaya Marks, Avaya is entitled to an injunction, and an order of destruction of all of Defendants' infringing materials.

65.     As a direct and proximate result of their infringements, Defendants have realized unjust profits, gains, and advantages at the expense of Avaya, including as set forth above.  In addition, Avaya has suffered substantial loss and damages to its property and business, including

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   significant monetary damages as a direct and proximate result of Defendants' infringements,

2   including as set forth above.  The harm caused by Defendants' unlawful conduct entitles Avaya to

3   recovery of all available remedies under the law, including but not limited to actual damages,

4   infringers' profits, treble damages, statutory damages (if elected), reasonable attorney fees, costs,

5   and prejudgment interest.

6   **SECOND CLAIM FOR RELIEF**

7   **Federal Unfair Competition**

8   *15 U.S.C. § 1125(a)*

9   **(Against All Defendants)**

10      66.     Avaya incorporates each of the foregoing paragraphs of this Complaint as if fully

11  set forth herein.

12      67.     Each Defendant did, without authorization, use in commerce the Avaya Marks, and

13  also make false designations of origin, false or misleading descriptions of fact, and/or false or

14  misleading representations of fact, which were and are likely to cause confusion, or to cause

15  mistake, or to deceive customers as to the affiliation, connection, or association of Defendants

16  with Avaya, and/or as to the origin, sponsorship, or approval of the Defendants' goods, services,

17  or commercial activities.

18      68.     Avaya alleges on information and belief that Defendants' acts have been committed

19  with knowledge of Avaya's exclusive rights and goodwill in Avaya Marks, as well as with

20  willfulness, bad faith, and the intent to cause confusion, mistake and/or to deceive.  Defendants'

21  conduct, as alleged herein, constitutes an exceptional case under 15 U.S.C. § 1117.

22      69.     Defendants' unauthorized use of counterfeit copies of Avaya's Marks falsely

23  represents Defendants' counterfeit "Avaya" products as emanating from, or being authorized by,

24  Avaya and places beyond Avaya's control the quality of products bearing Avaya Marks.

25      70.     Avaya has been, and continues to be, damaged by Defendants' infringement,

26  including by suffering irreparable harm through the diminution of trust and goodwill among

27  Avaya consumers and members of the general consuming public and the trade.  Avaya has no

28  adequate remedy at law.  As a result of Defendants' infringement of the Avaya Marks, Avaya is

1    entitled to an injunction, and an order of destruction of all of Defendants' infringing materials.

2    71.    As a direct and proximate result of their infringements, Defendants have realized

3    unjust profits, gains and advantages at the expense of Avaya, including as set forth above.  In

4    addition, Avaya has suffered substantial loss and damages to its property and business, including

5    significant monetary damages as a direct and proximate result of Defendants' infringements,

6    including as set forth above.  The harm caused by Defendants' unlawful conduct entitles Avaya to

7    recovery of all available remedies under the law, including but not limited to actual damages,

8    infringers' profits, treble damages, statutory damages (if elected), reasonable attorney fees, costs,

9    and prejudgment interest.

10   **THIRD CLAIM FOR RELIEF**

11   **Federal Direct and Indirect Copyright Infringement**

12   ***17 U.S.C. §§ 501, et seq.***

13   **(Against All Defendants, Except Telcom)**

14   72.    Avaya incorporates each of the foregoing paragraphs of this Complaint as if fully

15   set forth herein.

16   73.    Avaya's copyrighted software contains a substantial amount of original material

17   (including without limitation code, specifications, documentation and other materials) that is

18   copyrightable subject matter under the Copyright Act, 17 U.S.C. §§ 101, *et seq*.  Avaya owns

19   valid copyrights in the IPO software, including but not limited to U.S. Copyright Reg. Nos.

20   TX0008595990, TX0008592908,  TX0008592913, TX0008660283, and TX0008655667.

21   74.    Without consent, authorization, approval, or license, each Defendant knowingly,

22   willingly, and unlawfully copied, prepared, published, and distributed Avaya's copyrighted works,

23   portions thereof, and/or derivative works of the same, constituting direct copyright infringement.

24   75.    As alleged above, each Defendant distributed numerous stolen/pirated copies of

25   Avaya's copyright-registered software without authorization and in violation of Avaya's

26   copyrights.  Such distribution and use was not licensed.  Further, Avaya is informed and believes,

27   and thereon alleges, that certain Defendants, including at least Defendants Atlas, Metroline and

28   Featurecom, and Geraci, have purported to resell, transfer, and further distribute Avaya software

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  licenses, obtained either from a prior end user, from another reseller or from an authorized partner,

2  none of whom had any license rights to transfer an Avaya software license to a third party reseller

3  for further distribution.  The further resale, transfer, and distribution of such software licenses by

4  these Defendants violates Avaya's EULA, and in doing so, further infringes Avaya's copyrights,

5  as alleged herein.

6      76.    In addition, in further distributing such invalid Avaya software licenses, each

7  Defendant has thereby induced, caused, and materially contributed to the infringing acts of their

8  customers by encouraging, inducing, allowing and assisting them to use, copy, and distribute

9  Avaya's copyrighted works, and works derived therefrom.  As such, each Defendant has engaged

10  in both direct and indirect copyright infringement in violation of Section 501 of the Copyright Act.

11     77.    Defendants' direct and indirect infringements are, and have been, knowing and

12  willful.  By this unlawful copying, use, and distribution, Defendants have violated Avaya's

13  exclusive rights under 17 U.S.C. § 106 of the Copyright Act.

14     78.    Avaya is entitled to an injunction restraining Defendants from engaging in any

15  further such acts in violation of the United States copyright laws.  Unless Defendants are enjoined

16  and prohibited from infringing Avaya's copyrights, inducing others to infringe Avaya's

17  copyrights, and unless all infringing software, including but not limited to all pirated software

18  license keys, is seized and impounded pursuant to Section 503 of the Copyright Act, Defendants

19  will continue to intentionally infringe and induce infringement of Avaya's registered copyrights.

20     79.    Defendants' aforesaid conduct is causing immediate and irreparable injury to

21  Avaya and to Avaya's goodwill, and will continue to damage Avaya unless enjoined by this Court.

22  Avaya has no adequate remedy at law.  As a direct and proximate result of their infringements,

23  Defendants have realized unjust profits, gains and advantages at the expense of Avaya, including

24  as set forth above.  In addition, Avaya has suffered substantial loss and damages to its property

25  and business, including significant monetary damages as a direct and proximate result of

26  Defendants' infringements, including as set forth above.  The harm caused by Defendants'

27  unlawful conduct entitles Avaya to recovery of all available remedies under the law, including but

28  not limited to actual damages, infringers' profits, statutory damages (if elected), reasonable

1  attorney fees, costs, and prejudgment interest.

2  ### FOURTH CLAIM FOR RELIEF

3  ### Violations of the Digital Millennium Copyright Act

4  ### *17 U.S.C. §§ 1201, et seq.*

5  ### (Against All Defendants)

6  80.     Avaya incorporates each of the foregoing paragraphs of this Complaint as if fully

7  set forth herein.

8  81.     Avaya's has registered copyrights in its software.

9  82.     Avaya employs many technological measures to effectively control access to its

10  copyright-protected software, including but not limited to software license keys.

11  83.     Each Defendant has circumvented technological measures that Avaya put in place

12  to effectively control access to Avaya's copyright-protected software.  The pirated Internal Use

13  Licenses that Defendants have sold online avoid, bypass, decrypt, and deactivate a technological

14  protection measure without Avaya's authority for the purpose of gaining unauthorized access to

15  Avaya's copyrighted works.  Further, at least Defendants Hines, DBSI, and Tri-State have

16  accessed Avaya's electronic systems without or in excess of their authorization in order to obtain

17  and distribute the stolen Internal Use Licenses.

18  84.     As alleged further above, each Defendant has also offered to the public, provided or

19  otherwise trafficked in pirated Internal Use Licenses, which constitutes technology that is

20  primarily designed or produced for the purpose of either circumventing Avaya's technological

21  protection measures that effectively control access to copyrighted works, or allowing third parties

22  to access Avaya's copyrighted works without authorization.  Such pirated Internal Use Licenses

23  have only limited commercially significant purpose or use other than to circumvent a

24  technological protection measure that effectively controls access to copyrighted works, or are

25  marketed by Defendant for use in circumventing a technological protection measure that

26  effectively controls access to copyrighted works.

27  85.     Further, as alleged above, at least Defendants Atlas and Telcom have trafficked in

28  "Avaya" branded counterfeit phones with internal components, which were hacked and

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1 | programmed to bypass internal software controls.

2 |      86.    Defendants have realized significant profit by virtue of their circumvention of

3 | Avaya's technological protection measures and trafficking in technology to circumvent those

4 | measures.  Further, Avaya has sustained economic damage as a result of Defendants'

5 | circumvention of technological protection measures and trafficking in technology to circumvent

6 | those measures in an amount to be proven at trial.

7 |      87.    Avaya is therefore entitled to an injunction restraining Defendants from engaging

8 | in any further such acts in violation of the United States copyright laws.  Defendants' aforesaid

9 | conduct is causing immediate and irreparable injury to Avaya and to Avaya's goodwill, and will

10 | continue to damage Avaya unless enjoined by this Court.  Avaya has no adequate remedy at law.

11 | Unless Defendants are enjoined and prohibited from infringing Avaya's copyrights, inducing

12 | others to infringe Avaya's copyrights, and unless all pirated software license keys are seized and

13 | impounded pursuant to 17 U.S.C. Section 1203, Defendants will continue to be able to circumvent

14 | technological measures to effectively control access to Avaya's copyright-protected software and

15 | to traffic in technology to circumvent Avaya's technological protection measures.

16 |      88.    Defendants' acts of software access control circumvention, alleged further above,

17 | are and have been knowing and willful.  As a direct and proximate result of their infringements,

18 | Defendants have realized unjust profits, gains and advantages at the expense of Avaya, including

19 | as set forth above.  In addition, Avaya has suffered substantial loss and damages to its property

20 | and business, including significant monetary damages as a direct and proximate result of

21 | Defendants' infringements, including as set forth above.  The harm caused by Defendants'

22 | unlawful conduct entitles Avaya to recovery of all available remedies under the law, including but

23 | not limited to actual damages, infringers' profits, statutory damages (if elected), reasonable

24 | attorney fees, costs, and prejudgment interest.

25 | **FIFTH CLAIM FOR RELIEF**

26 | **Violation of the Computer Fraud and Abuse Act**

27 | *18 U.S.C. §§ 1030, et seq.*

28 | **(Against Defendants Pearce, Hines, DBSI, and Tri-State)**

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

89.     Avaya incorporates each of the foregoing paragraphs of this Complaint as if fully set forth herein.

90.     Avaya's computer systems are involved in interstate and/or foreign commerce and communication, and are protected computers under 18 U.S.C. § 1030(e)(2).

91.     Defendants Pearce, Hines,  DBSI, and Tri-State(together the "Computer Fraud Defendants") knowingly and intentionally accessed Avaya's computer systems without authorization or in excess of authorization.

92.     Leveraging that access, the Computer Fraud Defendants obtained and used valuable information from Avaya's protected computers in transactions involving interstate or foreign commerce and/or communications.  This information included pirated and/or stolen Internal Use Licenses, as well as password and other login information to enable them to hijack and leverage other user accounts.

93.     Thus, the Computer Fraud Defendants also knowingly, willfully, and with an intent to defraud accessed Avaya's computers without authorization or in excess of authorization and obtained valuable information from Avaya's computers that the Computer Fraud Defendants used to obtain something of value.  The Computer Fraud Defendants also knowingly, willfully, and with an intent to defraud trafficked in login information through which Avaya computers were accessed without authorization, affecting interstate commerce.

94.     Avaya has suffered irreparable harm and injuries resulting from the Computer Fraud Defendants' conduct, which harm will continue unless the Computer Fraud Defendants are enjoined from further unauthorized access of Avaya's protected computers.  Avaya has no adequate remedy at law.

95.     The Computer Fraud Defendants' conduct has caused a loss to Avaya during a one-year period in excess of $5,000.  Avaya has been harmed by the Computer Fraud Defendants' actions, including but not limited to being forced to expend significant resources to investigate the unauthorized access and abuse of its computer network and to address the harm to Avaya and its computer network caused by that unlawful conduct.  The harm caused by the Computer Fraud Defendants' unlawful conduct entitles Avaya to recovery of all available remedies under the law,

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   including but not limited to damages and equitable relief.

2   **SIXTH CLAIM FOR RELIEF**

3   **Violations of the California Computer Data Access and Fraud Act**

4   ***California Penal Code § 502***

5   **(Against Defendants Pearce, Hines, DBSI, and Tri-State)**

6   96.    Avaya incorporates each of the foregoing paragraphs of this Complaint as if fully

7   set forth herein.

8   97.    The Computer Fraud Defendants knowingly accessed and without permission used

9   data from Avaya's computers, computer systems, and/or computer network in order to devise

10   and/or execute a scheme to defraud and deceive in violation of California Penal Code § 502(c)(l).

11   The Computer Fraud Defendants knowingly accessed and without permission took, copied, and/or

12   used data from Avaya's computers, computer systems and/or computer network in violation of

13   California Penal Code § 502(c)(2).  The Computer Fraud Defendants knowingly and without

14   permission used or caused to be used Avaya's computer services in violation of California Penal

15   Code § 502(c)(3).  The Computer Fraud Defendants knowingly accessed and without permission

16   altered and added data to Avaya's computers, computer systems, and/or computer network in

17   violation of California Penal Code § 502(c)(4).  The Computer Fraud Defendants knowingly and

18   without permission accessed or caused to be accessed Avaya's computers, computer systems,

19   and/or computer network in violation of California Penal Code § 502(c)(7).

20   98.    Avaya suffered and continues to suffer damage as a result of the Computer Fraud

21   Defendants' violations of the California Penal Code § 502 identified above.

22   99.    The Computer Fraud Defendants' conduct also caused irreparable harm and injuries

23   to Avaya, and, unless enjoined, will cause further irreparable injury, for which Avaya has no

24   adequate remedy at law.  Avaya is therefore entitled to an injunction restraining the Computer

25   Fraud Defendants from engaging in any further such acts in violation of the law.

26   100.    The Computer Fraud Defendants willfully violated California Penal Code § 502 in

27   disregard and derogation of Avaya's rights, and their actions as alleged above were carried out

28   with oppression, fraudulent intent, and malice.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

101.    The harm caused by the Computer Fraud Defendants ' unlawful conduct entitles Avaya to recovery of all available remedies under the law, including but not limited to compensatory damages, punitive or exemplary damages, reasonable attorney fees, costs, and prejudgment interest.

## SEVENTH CLAIM FOR RELIEF

### Trafficking In Counterfeit Or Illicit Labels

### *18 U.S.C. § 2318*

### (Against All Defendants, Except Telcom)

102.    Avaya incorporates each of the foregoing paragraphs of this Complaint as if fully set forth herein.

103.    18 U.S.C. § 2318 provides in pertinent part that it is a federal crime for persons to knowingly traffic in counterfeit or illicit labels, documentation, or packaging accompanying a copy of a computer program.  Any copyright owner who is injured, or is threatened with injury, by a violation of 18 U.S.C. § 2318(a) may bring a civil action.

104.    In order to access and run Avaya's copyright protected software, licensees must validate their copies of Avaya's software with license keys that are generated through Avaya's computer systems.  The license keys are encrypted alphanumeric codes that are encoded with the authorized software features that have been licensed and a unique serial number of a memory card that is physically inserted into the Avaya-built server running the Avaya software.  In this way, the Avaya software license keys are designed to distribute Avaya software to licensed end users and to prevent distribution, copying, and infringement by unlicensed users or in excess of a user's license.  Further, because these Avaya software license keys control the access to Avaya's software and because these license entitlements are tracked internally by Avaya, these Avaya software license keys also enable Avaya to verify whether a particular copy of its software installed on a user's system is counterfeit or infringing, or being used without Avaya's permission.

105.    Avaya's software license keys are identifying labels accompanying and designed to accompany copies of Avaya's computer programs.  The pirated Avaya Internal Use Licenses that Defendants all trafficked in constitute illicit labels within the meaning of 18 U.S.C. § 2318, as

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   they are genuine licensing documents that are used by Avaya to verify that a copy of a computer

2   program is not infringing of any Avaya copyright.  Defendants knowingly trafficked in illicit

3   labels by distributing pirated Avaya Internal Use Licenses.  As further alleged above, Defendants

4   Pearce, Sharkfish, Hines, DBSI, and Tri-State were willfully and knowingly trafficking in

5   counterfeit or illicit labels, documentation, or packaging accompanying a copy of a computer

6   program.  Hines, DBSI, Tri-State, Featurecom, and Drew Telecom were authorized partners and

7   therefore knew how Avaya software licenses were distributed through Avaya's authorized

8   distribution channels.  Hines, DBSI, and Tri-State therefore knew, or were willfully blind to the

9   fact, that the distribution of Avaya software and the illicit labels accompanying it, obtained

10  through Pearce, was not legal, authorized, or permitted by Avaya.

11          106.    Further, the other reseller Defendants, including at least Atlas, Metroline,

12  Featurecom, Geraci, and Conroy, also acted willfully and knowingly in supporting this unlawful

13  scheme or with willful blindness and complete disregard for the harm caused to Avaya and its end

14  customers as a result of their direct and substantial involvement in enabling this vast illegal

15  operation and in thereby infringing Avaya's intellectual property.  These reseller Defendants,

16  including at least Atlas, Metroline, Featurecom, Geraci, and Conroy, knew or should have known

17  that the Avaya software and the accompanying illicit labels they were trafficking in were not

18  authorized or permitted by Avaya.  These reseller Defendants, including at least Atlas, Metroline,

19  Featurecom, Geraci, and Conroy, were not buying the stolen Internal Use Licenses through

20  Avaya's authorized distribution channels, which means they knew or should have known that the

21  further resale of such licenses was not authorized and in violation of Avaya's software license

22  restrictions on transfer and/or resale.  These reseller Defendants, including at least Atlas,

23  Metroline, Featurecom, Geraci, and Conroy, were purchasing the stolen Internal Use Licenses

24  from Pearce and/or Hines, knowing, or with willful blindness to the fact, that they were trafficking

25  in illicit or counterfeit labels by doing so.  Avaya is informed and believes, and thereon alleges,

26  that these stolen Internal Use Licenses were being resold by Pearce and Hines (including, at least,

27  through Sharkfish, DBSI, and Tri-State) at prices that were often below Avaya's own internal

28  pricing to its authorized distributors, which is of course well below the price that Avaya's

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   authorized distributors could then sell to end users.  As such, no one, and certainly not resellers

2   who have done any business with respect to Avaya products, could possibly believe in good faith

3   that such Avaya software and the illicit labels accompanying them had been authorized or

4   permitted by Avaya.

5       107.   Further, as alleged further above, Avaya is informed and believes, and thereon

6   alleges, that individuals or entities in Austin, Texas, Auburn Hills, Michigan, and Tampa/Largo,

7   Florida, (the locations of Atlas, Telephone Man, and Telecom Spot and therefore likely connected

8   with or employed by these reseller defendants) were directly themselves leveraging the log-in

9   credentials unlawfully used by Defendants Hines and DBSI, as alleged further above to download

10  and/or otherwise facilitate the distribution of the pirated Internal Use Licenses, showing further

11  knowledge that the Avaya software and the illicit labels accompanying them were not legal,

12  authorized, or permitted by Avaya.

13      108.   Defendants' acts in the commission of the above unlawful conduct used or intended

14  to use interstate and/or foreign commerce.  Further, the Avaya software license keys must

15  accompany the delivery of Avaya software, as without the license key the Avaya software will not

16  operate.

17      109.   Defendants' conduct in violation of 18 U.S.C. § 2318 alleged above are, and have

18  been, knowing and willful.  Defendants' aforesaid conduct is causing immediate and irreparable

19  injury to Avaya and to Avaya's goodwill, and will continue to damage Avaya unless enjoined by

20  this Court.  Avaya has no adequate remedy at law.  Avaya is entitled to an injunction restraining

21  Defendants from engaging in any further such acts in violation of 18 U.S.C. § 2318.  Unless

22  Defendants are enjoined and prohibited from such conduct, and unless all illicit and/or counterfeit

23  labels, including but not limited to all pirated software license keys, are seized and impounded

24  pursuant to 18 U.S.C. § 2318, Defendants will continue to traffic in such illicit and/or counterfeit

25  labels.

26      110.   As a direct and proximate result of their unlawful conduct in violation of 18 U.S.C.

27  § 2318, Defendants have realized unjust profits, gains and advantages at the expense of Avaya,

28  including as set forth above.  In addition, Avaya has suffered substantial loss and damages to its

1 property and business, including significant monetary damages as a direct and proximate result of

2 Defendants' infringements, including as set forth above.  The harm caused by Defendants'

3 unlawful conduct entitles Avaya to recovery of all available remedies under the law, including but

4 not limited to actual damages, infringers' profits, statutory damages (if elected), reasonable

5 attorney fees, costs, and prejudgment interest.

**EIGHTH CLAIM FOR RELIEF**

**Unjust Enrichment/Restitution/Constructive Trust**

***Common Law***

**(Against All Defendants)**

10      111.      Avaya incorporates paragraphs 1-33, 39-71, and 89-110 of this Complaint as if

11 fully set forth herein, specifically excluding any allegations from those paragraphs that form the

12 basis of Avaya's copyright claims in this Action.

13      112.      Each Defendant unjustly received benefits at the expense of Avaya through their

14 wrongful conduct in infringing Avaya's trademarks, counterfeiting Avaya's trademarks, and

15 trafficking in counterfeit or illicit labels as alleged further above.  Further, the Computer Fraud

16 Defendants unjustly received benefits at the expenses of Avaya through their wrongful access to

17 Avaya's technological systems and circumvention of Avaya's security controls.  Defendants

18 continue to unjustly retain these benefits at the expense of Avaya.  The unjust receipt of the

19 benefits obtained by Defendants lacks any adequate legal basis and thus cannot conscientiously be

20 retained by Defendants.  Therefore, the circumstances of the receipt and retention of such benefits

21 are such that, as between Avaya and Defendants, it is unjust for Defendants to retain any such

22 benefits.  As alleged above, Defendants' wrongful conduct and retention of the unjust benefits

23 obtained through that wrongful conduct was willful and undertaken with fraudulent intent.

24      113.      The harm caused by the Defendants ' unlawful conduct entitles Avaya to recovery

25 of all available remedies under the law, including but not limited to full restitution of all amounts

26 and/or other benefits in which Defendants have been unjustly enriched at Avaya's expense, in an

27 amount to be proven at trial, and/or imposition of a constructive trust over such amounts in favor

28 of Avaya, as well as punitive or exemplary damages, reasonable attorney fees, costs, and

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  prejudgment interest to the fullest extent available under the law.

2                              **PRAYER FOR RELIEF**

3          WHEREFORE, Avaya respectfully prays that the Court enter judgment as follows:

4          A.      For entry of judgment holding Defendants liable for their unlawful conduct,

5  including but not limited to their infringement of Avaya copyrights and trademarks set forth

6  above;

7          B.      For an order preliminarily and permanently enjoining Defendants, their officers,

8  agents, servants, employees, attorneys, and affiliated companies, their assigns and successors in

9  interest, and those persons in active concert or participation with them, from any continued or

10 further acts of counterfeiting or infringement of any Avaya trademarks and/or copyrights,

11 including inducing infringement by any other party, as well as from further acts of unfair

12 competition, trafficking in illicit and/or counterfeit labels, and/or circumvention of Avaya

13 technological measures controlling access to its copyright-protected software, and enjoining the

14 Computer Fraud Defendants from their officers, agents, servants, employees, attorneys, and

15 affiliated companies, their assigns and successors in interest, and those persons in active concert or

16 participation with them, from any continued or further acts of computer fraud;

17         C.      For an order that any counterfeit or infringing products, or derivative works

18 therefrom, including but not limited to all unlicensed Avaya software and/or unauthorized Avaya

19 software licenses, as well as any illicit and/or counterfeit labels in Defendants' possession,

20 custody, or control, be seized, impounded, and transferred to Avaya or to the Court or destroyed,

21 pursuant to 15 U.S.C. § 1118, 17 U.S.C. §§ 503 & 1203, and/or 18 U.S.C. § 2318;

22         D.      For an order from the Court that an asset freeze and/or constructive trust be

23 imposed over all monies and profits in Defendants' possession, custody, or control, which

24 rightfully belongs or should be restored or delivered to Avaya;

25         E.      For Avaya's damages according to proof resulting from Defendants' unlawful and

26 infringing conduct as alleged above as well as Defendants' profits to the fullest extent available

27 under the law;

28         F.      For statutory damages to the fullest extent available under the law and to the extent

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   elected by Avaya prior to the rendering of final judgment;

2        G.     For prejudgment interest;

3        H.     For reasonable attorney fees and costs to the fullest extent available under the law;

4        I.     For treble damages, enhanced damages, punitive damages, and/or exemplary

5   damages to the fullest extent available under the law;

6        J.     For full restitution, including but not limited to restoration of all property

7   unlawfully taken from Avaya, as well as any ill-gotten gains from the unlawful conduct alleged

8   above;

9        K.     For an order that Avaya be awarded injunctive, specific performance, and other

10  provisional remedies, as appropriate; and,

11       L.     For such other and further relief as the Court deems just and proper.

12  DATED: February 5, 2021          SIDEMAN & BANCROFT LLP

                   By:         */s/ Zachary J. Alinder*

13                        Zachary J. Alinder

14                        *Attorneys for Plaintiff*

                      AVAYA INC.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

## **JURY DEMAND**

Pursuant to Civ. L.R. 3-6 and Fed. R. Civ. Proc. 38, Plaintiff Avaya Inc. hereby demands a trial by a jury on all issues herein so triable.


DATED: February 5, 2021                    SIDEMAN & BANCROFT LLP

                                           By:    _____*/s/ Zachary J. Alinder*_____
                                                       Zachary J. Alinder
                                                       *Attorneys for Plaintiff*
                                                       AVAYA INC.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

**EXHIBIT A**

# AVAYA

**AVAYA GLOBAL SOFTWARE LICENSE TERMS**
REVISED:  September 20, 2018

THESE GLOBAL SOFTWARE LICENSE TERMS ("**SOFTWARE LICENSE TERMS**") GOVERN THE USE OF PROPRIETARY SOFTWARE AND THIRD-PARTY PROPRIETARY SOFTWARE LICENSED THROUGH AVAYA. READ THESE SOFTWARE LICENSE TERMS CAREFULLY, IN THEIR ENTIRETY, BEFORE INSTALLING, DOWNLOADING OR USING THE SOFTWARE (AS DEFINED IN SECTION A BELOW). BY INSTALLING, DOWNLOADING OR USING THE SOFTWARE, OR AUTHORIZING OTHERS TO DO SO, YOU, ON BEHALF OF YOURSELF AND THE ENTITY FOR WHOM YOU ARE DOING SO (HEREINAFTER REFERRED TO INTERCHANGEABLY AS "**YOU**," "**YOUR**," AND "**END USER**"), AGREE TO THESE SOFTWARE LICENSE TERMS AND CONDITIONS AND CREATE A BINDING CONTRACT BETWEEN YOU AND AVAYA INC. OR THE APPLICABLE AVAYA AFFILIATE ("**AVAYA**"). IF YOU ARE ACCEPTING THESE SOFTWARE LICENSE TERMS ON BEHALF OF A COMPANY OR OTHER LEGAL ENTITY, YOU REPRESENT THAT YOU HAVE THE AUTHORITY TO BIND SUCH ENTITY TO THESE SOFTWARE LICENSE TERMS. IF YOU DO NOT HAVE SUCH AUTHORITY OR DO NOT WISH TO BE BOUND BY THESE SOFTWARE LICENSE TERMS, SELECT THE "DECLINE" BUTTON AT THE END OF THESE SOFTWARE LICENSE TERMS OR THE EQUIVALENT OPTION.

**A.   Definitions**

(i)   "**Affiliate**" means any entity that is directly or indirectly controlling, controlled by, or under common control with Avaya Inc. or End User. For purposes of this definition, "control" means the power to direct the management and policies of such party, directly or indirectly, whether through ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

(ii)   "**Documentation**" means information published in varying mediums which may include product information, operating instructions and performance specifications that are generally made available to users of products. Documentation does not include marketing materials.

(iii)   "**Software**" means computer programs in object code, provided by Avaya or an Avaya Channel Partner, whether as stand-alone products or pre-installed on hardware products, and any upgrades, updates, patches, bug fixes, or modified versions thereto.

**B.  Scope.** These Software License Terms are applicable to anyone who installs, downloads, and/or uses Software and/or Documentation, obtained from Avaya or an Avaya reseller, distributor, direct partner, system integrator, service provider or other partner authorized to provide Software to End Users in the applicable territory (collectively "**Avaya Channel Partner**"). Some or all of the Software may be remotely hosted or accessible to You through the Internet. You are not authorized to use the Software if the Software was obtained from anyone other than Avaya or an Avaya Channel Partner.

These Software License Terms govern Your use of the Software and/ or Documentation except to the extent: (i) You are obtaining the Software directly from Avaya and You have a separate, written agreement with Avaya governing Your use of the Software, signed within three (3) years of the purchase of the applicable Software license, (ii) You are obtaining the Software from an Avaya Channel Partner and You have a separate, written agreement with Avaya governing Your use of Software obtained from that Avaya Channel Partner, signed within three (3) years of the purchase of the applicable Software license, (iii) the Software is accompanied by a Shrinkwrap License, or (iv) the Software is governed by Third Party Terms. If You have a separate signed purchase agreement with Avaya, as set forth in (i) or (ii) above, such agreement shall take precedence over these Software License Terms to the extent of any conflict. With respect to third party elements subject to a Shrinkwrap License or other Third Party Terms, the Shrinkwrap License or other Third Party Terms shall take precedence over any signed agreement with Avaya and these Software License Terms to the extent of any conflict.

**C.  License Grant.** Avaya grants You a non-sublicensable, non-exclusive, non-transferable license to use Software and associated Documentation obtained from Avaya or an Avaya Channel Partner, and for which applicable fees have been paid, for Your internal business purposes at the indicated capacity and features and within the scope of the applicable license types described below and at locations where the Software is initially installed. Licenses provided under these Software License Terms are for a perpetual duration, unless (i) otherwise specified in the order or (ii) the license is provided as part of a service or subscription, in which case the license grant will be limited to the duration specified on the order or in the service or subscription Documentation. Documentation shall be used only in support of the authorized use of the associated Software. Software installed on mobile-devices and clients, such as a laptop or mobile phone, may be used outside of the country where the Software was originally installed, provided that such use is on a temporary basis only.

(i)   **Right to Move License Entitlements.** Notwithstanding the foregoing limitation permitting use of the Software only at the location where it is initially installed, You may move eligible right to use license entitlements ("**RTU**") for certain specified Software from one location to another in accordance with Avaya's then-current software license portability policy ("**License Portability Policy**"), which License Portability Policy is available upon request, subject to the conditions set forth in this Section C (i):

(a)   You shall provide written notice within ten (10) days to Avaya of any RTU moves including but not limited to, the number and type of licenses moved, the location of the original Server and the location of the new Server, the date of such RTU moves and any other information that Avaya may reasonably request;

(b)   You may only move RTU's to and from Designated Processors or Servers supporting the same Software application;

(c)   You must reduce the quantity of the licenses on the original Server by the number of RTU's being moved to the new Server;

(d)   You acknowledge that: (1) You may be charged additional fees when moving RTU's as per Avaya's then-current License Portability Policy, (2) maintenance services do not cover system errors caused by moves not performed by Avaya, (3) You are responsible for any programming, administration, design assurance, translation or other activity to make sure the Software will scale and perform as specified as a result of any license moves, and if any such transfer results in a requirement for Avaya system engineering or requires the use of on-site Avaya personnel, You will be charged the Time and Materials fees for such activity;

(e)   If Your maintenance coverage differs on licenses on the same product instance at the location of the new Server, service updates, recasts and/or fees may apply and any fee adjustments for differences in coverage will only be made on a going forward basis as of the date Avaya receives notice of the RTU move; and

(f)   You may move RTU's from one Affiliate to another Affiliate provided that You comply with all of the conditions of this Section, including, without limitation, providing the name and address of the new Affiliate in Your written notice under subpart (a) above, and provided such new Affiliate agrees to be bound by these Software License Terms.

Avaya Global Software License Terms (09202018v1)

© 2016-2018  Avaya Inc. All rights reserved. Avaya and the Avaya Logo are trademarks of Avaya Inc. and may be registered in certain jurisdictions. All trademarks identified by the ® or TM are registered trademarks, service marks or trademarks, respectively, of Avaya Inc. All other trademarks are the property of their respective owners.

(ii)    **Non-Production License Grant.** With respect to Software distributed by Avaya to You for non-production purposes, the scope of the license granted herein shall be to use the Software in a non-production environment solely for testing or other non-commercial purposes on a single computer or as otherwise designated by Avaya.

**D.   All Rights Reserved.** Avaya or its licensors retain title to and ownership of the Software, Documentation, and any modifications or copies thereof. Except for the limited license rights expressly granted in these Software License Terms, Avaya or its licensors reserve all rights, including without limitation copyright, patent, trade secret, and all other intellectual property rights, in and to the Software and Documentation and any modifications or copies thereof. The Software contains trade secrets of Avaya, its suppliers, or licensors, including but not limited to the specific design, structure and logic of individual Software programs, their interactions with other portions of the Software, both internal and external, and the programming techniques employed.

**E.   Disclaimer.** Any software security feature is not a guaranty against malicious code, deleterious routines, and other techniques and tools employed by computer "hackers" and other third parties to create security exposures. Compromised passwords represent a major security risk. Avaya encourages You to create strong passwords using three different character types, change Your password regularly and refrain from using the same password regularly. You must treat such information as confidential. You agree to notify Avaya immediately upon becoming aware of any unauthorized use or breach of Your user name, password, account, or subscription. You are responsible for ensuring that Your networks and systems are adequately secured against unauthorized intrusion or attack and regularly back up of Your data and files in accordance with good computing practices.

**F.   General License Restrictions.** To the extent permissible under applicable law, You agree not to: (i) decompile, disassemble, reverse engineer, reverse translate or in any other manner decode the Software; (ii) alter, modify or create any derivative works or enhancements, adaptations, or translations of the Software or Documentation; (iii) sell, sublicense, lease, rent, loan, assign, convey or otherwise transfer the Software or Documentation except as expressly authorized by Avaya in writing, and any attempt to do so is void; (iv) distribute, disclose or allow use of the Software or Documentation, in any format, through any timesharing service, service bureau, network or by any other similar means, such as hosting or cloud, except as expressly authorized by Avaya in writing; (v) allow any service provider or other third party, with the exception of Avaya's authorized maintenance providers who are acting solely on behalf of and for the benefit of End User, to use or execute any software commands that facilitate the maintenance or repair of any product; (vi) gain access to or the use of any Software or part thereof without authorization from Avaya; (vii) enable or activate, or cause, permit or allow others to enable or activate any logins reserved for use by Avaya or Avaya's authorized maintenance providers; (viii) publish the results of any tests run on the Software; (ix) disclose, provide, or otherwise make available to any third party any trade secrets contained in the Software or Documentation; (x) use the Software in a virtualized environment except as expressly authorized by these Software License Terms, or (xi) permit or encourage any third party to do any of the foregoing.

End User agrees not to allow anyone other than its authorized employees, agents or representatives who have a need to use the Software or Documentation to have access to the Software or Documentation. End User agrees to inform any third party to whom You give access to the Software or Documentation of these Software License Terms and shall obligate such third party to comply with such terms and provisions. End User shall be responsible for End User and any authorized third party's failure to comply with these Software License Terms and shall indemnify Avaya for any damages, loss, expenses or costs, including attorneys' fees and costs of suit, incurred by Avaya as a result of non-compliance with this Section.

**Additional License Restrictions Applicable to the EU.** Notwithstanding the limitations in Sections C and F, solely to the extent an End User's resale rights cannot be precluded or restricted by mandatory applicable law, End Users located in a member state of the European Union may resell licenses subject to the following conditions:

(i)    Prior to resale of a license, End User will promptly, but not less than 30 days prior to a resale, notify Avaya in writing of its intention to resell a license.

(ii)   Unless expressly agreed otherwise in writing, End User will not be permitted to resell less than its entire license to a buyer.

(iii)  End User will resell the Software subject to these Software License Terms and shall ensure that the buyer is bound by these Software License Terms.

(iv)   Upon resale of a license, End User shall immediately and permanently cease all use of and destroy all copies of the Software and any related materials in End User's possession or control and, upon Avaya's request, certify such destruction in writing. Avaya may audit End User's compliance with the foregoing in accordance with Section K below.

(v)    End User will keep appropriate records of all license resale including, but not limited to, the name and location of the buyer and the number and types of licenses resold.

(vi)   End User acknowledges that: (a) resale of a license is subject to any relevant Third Party Terms; (b) maintenance services do not cover system errors caused by license resale not performed by Avaya; (c) Avaya is not responsible for any programming, administration, design assurance, translation or other activity to make sure the Software will scale and perform as specified as a result of any license resale, and if any such resale results in a requirement for Avaya system engineering or requires the use of on-site Avaya personnel, End User will be charged the then applicable Avaya time and materials rates for such activity; (d) any resale of a maintenance services agreement between Avaya and the original licensee is subject to Avaya's prior written approval. Avaya reserves the right to withhold such approval and/or offer the new licensee a maintenance services agreement subject to different terms and conditions; and (e) if not expressly agreed by Avaya in writing otherwise, the resale of licenses does not entitle the End User to cancel or partially cancel a maintenance services agreement during the agreed term.

If the Software is rightfully located in a member state of the European Union and End User needs information about the Software in order to achieve interoperability of an independently created software program with the Software, End User will first request such information from Avaya. Avaya may charge End User a reasonable fee for the provision of such information. End User agrees to protect such information in accordance with Section Q below, and shall use such information only in accordance with the terms and conditions under which Avaya provides such information. To the extent that the End User is expressly permitted by applicable mandatory law to undertake any activities related to achieving interoperability of an independently created software program with the Software, End User will not exercise those rights until End User has given Avaya twenty (20) days written notice of its intent to exercise any such rights.

**G.   Proprietary Rights Notices.** You agree to retain, in the same form and location, all proprietary legends and/or logos of Avaya and/or Avaya's suppliers on any permitted copies of the Software or Documentation.

**H.   Backup Copies.** End User may create a reasonable number of archival and backup copies of the Software and the Documentation.

**I.   Upgrades.** End User's right to use any upgrades to the Software shall be conditioned upon End User having a valid license to use the original Software and paying the applicable license fee to Avaya or an Avaya Channel Partner for such upgrade.

© 2016-2018  Avaya Inc. All rights reserved. Avaya and the Avaya Logo are trademarks of Avaya Inc. and may be registered in certain jurisdictions. All trademarks identified by the ® or TM are registered trademarks, service marks or trademarks, respectively, of Avaya Inc. All other trademarks are the property of their respective owners.

**J. Warranty.** Avaya's Global Product Warranty Policy for End Users, which details a limited warranty for Software and Software media and the applicable procedures, exclusions, and disclaimers, is available through the following website: http://support.avaya.com (or such successor site as designated by Avaya). NEITHER AVAYA NOR ITS SUPPLIERS MAKE ANY WARRANTY, EXPRESS OR IMPLIED, THAT SECURITY THREATS AND VULNERABILITIES WILL BE DETECTED OR SOFTWARE WILL RENDER AN END USER'S NETWORK OR PARTICULAR NETWORK ELEMENTS SAFE FROM INTRUSIONS AND OTHER SECURITY BREACHES. Please note that if You are acquiring the Software from an Avaya Channel Partner outside the United States of America or Canada, any warranty is provided to You by said Avaya Channel Partner and not by Avaya.

**K. Compliance.** Avaya and the Avaya Channel Partner who provided the Software have the right to inspect and/or audit (i) by remote polling or other reasonable electronic means at any time and (ii) in person during normal business hours and with reasonable notice End User's books, records, and accounts, to determine End User's compliance with these Software License Terms, including but not limited to usage levels. In the event such inspection or audit uncovers non-compliance with these Software License Terms, then without prejudice to Avaya's termination rights hereunder, End User shall promptly pay Avaya any applicable license fees. End User agrees to keep a current record of the location of the Software.

**L. Termination of License; Effect of Termination/ Expiration.** If You breach these Software License Terms and if within ten (10) business days of Avaya's written request to cure, You have not cured all breaches of these limitations or restrictions, Avaya may, with immediate effect, terminate the licenses granted in these Software License Terms without prejudice to any available rights and remedies Avaya may have at law or in equity. Upon termination or expiration of the license for any reason, You must immediately destroy all copies of the Software and any related materials in Your possession or control and, upon Avaya's request, certify such destruction in writing. The provisions concerning confidentiality, the protection of trade secrets and proprietary rights, license restrictions, export control, and all limitations of liability and disclaimers and restrictions of warranty (as well as any other terms which, by their nature, are intended to survive termination) will survive any termination or expiration of the Software License Terms.

**M. License Types.** Avaya grants You a license within the scope of the license types described below, with the exception of Heritage Nortel Software, for which the scope of the license is detailed in Section N below. Where the order documentation does not expressly identify a license type, the applicable license will be a Designated System License as set forth below in Section M(i)1 or 2 as applicable. The applicable number of licenses and units of capacity for which the license is granted will be one (1), unless a different number of licenses or units of capacity is specified in the documentation or other materials available to You. "**Designated Processor**" means a single stand-alone computing device, such as, a CPU core or digital signal processing (DSP) core dedicated to the execution of the Software. "**Server**" means a set of Designated Processors that hosts (physically or virtually) a software application to be accessed by multiple users. "**Instance**" means a single copy of the Software executing at a particular time: (i) on one physical machine; or (ii) on one deployed software virtual machine or similar deployment. "**Cluster**" means a group of Servers and other resources that act as a single system.

**(i) Designated System(s) License (DS).** End User may install and use each copy or an Instance of the Software only: 1) on a number of Designated Processors up to the number indicated in the order; or 2) up to the number of Instances of the Software as indicated in the order, Documentation, or as authorized by Avaya in writing.  Avaya may require the Designated Processor(s) to be identified in the order by type, serial number, feature key, Instance, location or other specific designation, or to be provided by End User to Avaya through electronic means established by Avaya specifically for this purpose.

**(ii) Concurrent User License (CU).** End User may install and use the Software on multiple Designated Processors or one or more Servers, so long as only the licensed number of Units are accessing and using the Software at any given time. A "**Unit**" means the unit on which Avaya, at its sole discretion, bases the pricing of its licenses and can be, without limitation, an agent, port or user, an e-mail or voice mail account in the name of a person or corporate function (e.g., webmaster or helpdesk), or a directory entry in the administrative database utilized by the Software that permits one user to interface with the Software. Units may be linked to a specific, identified Server or an Instance of the Software.

**(iii) Cluster License (CL).** End User may install and use each copy or an Instance of the Software only up to the number of Clusters as indicated on the order with a default of one (1) Cluster if not stated.

**(iv) Enterprise License (EN).** End User may install and use each copy or an Instance of the Software only for enterprise-wide use of an unlimited number of Instances of the Software as indicated on the order or as authorized by Avaya in writing.

**(v) Named User License (NU).** You may: (i) install and use each copy or Instance of the Software on a single Designated Processor or Server per authorized Named User (defined below); or (ii) install and use each copy or Instance of the Software on a Server so long as only authorized Named Users access and use the Software. "Named User", means a user or device that has been expressly authorized by Avaya to access and use the Software. At Avaya's sole discretion, a "Named User" may be, without limitation, designated by name, corporate function (e.g., webmaster or helpdesk), an e-mail or voice mail account in the name of a person or corporate function, or a directory entry in the administrative database utilized by the Software that permits one user to interface with the Software.

**(vi)Shrinkwrap License (SR).** You may install and use the Software in accordance with the terms and conditions of the applicable license agreements, such as "shrinkwrap" or "clickthrough" license accompanying or applicable to the Software ("Shrinkwrap License")**.**

**N. Heritage Nortel Software.** "**Heritage Nortel Software**" means the Software that was acquired by Avaya as part of its purchase of the Nortel Enterprise Solutions Business in December 2009. The Heritage Nortel Software is the Software contained within the list of Heritage Nortel Products located at http://support.avaya.com/LicenseInfo under the link "**Heritage Nortel Products**" (or such successor site as designated by Avaya). For Heritage Nortel Software, Avaya grants You a license to use Heritage Nortel Software provided hereunder solely to the extent of the authorized activation or authorized usage level, solely for the purpose specified in the Documentation, and solely as embedded in, for execution on, or for communication with Avaya equipment. Charges for Heritage Nortel Software may be based on extent of activation or use authorized as specified in an order or invoice.

**O. Third Party Components.** You acknowledge certain software programs or portions thereof included in the Software may contain software (including open source software) distributed under third party agreements ("**Third Party Components**"), which contain terms regarding the rights to use certain portions of the Software ("**Third Party Terms**"). As required, information regarding distributed Linux OS source code (for those Products that have distributed Linux OS source code) and identifying the copyright holders of the Third Party Components and the Third Party Terms that apply is available in the Products, Documentation or on Avaya's website at: http://support.avaya.com/Copyright (or such successor site as designated by Avaya). The open source software license terms provided as Third Party Terms are consistent with the license rights granted in these Software License Terms, and may contain additional rights benefiting You, such as modification and distribution of the open source software. The Third Party Terms shall take precedence over these Software License Terms, solely with respect to the applicable Third Party Components, to the extent that these Software License Terms impose greater restrictions on You than the applicable Third Party Terms.

**P. Limitation of Liability.** EXCEPT FOR PERSONAL INJURY CLAIMS OR WILLFUL MISCONDUCT, AND TO THE EXTENT PERMITTED UNDER APPLICABLE LAW, NEITHER AVAYA, AVAYA AFFILIATES, THEIR LICENSORS OR SUPPLIERS, NOR ANY OF THEIR DIRECTORS, OFFICERS,

© 2016-2018  Avaya Inc. All rights reserved. Avaya and the Avaya Logo are trademarks of Avaya Inc. and may be registered in certain jurisdictions. All trademarks identified by the ® or TM are registered trademarks, service marks or trademarks, respectively, of Avaya Inc. All other trademarks are the property of their respective owners.

EMPLOYEES, OR AGENTS SHALL BE LIABLE FOR (i) ANY INCIDENTAL, SPECIAL, PUNITIVE, EXEMPLARY, STATUTORY, INDIRECT OR CONSEQUENTIAL DAMAGES, (ii) ANY LOSS OF PROFITS OR REVENUE, LOSS OR CORRUPTION OF DATA, TOLL FRAUD, OR COST OF COVER, SUBSTITUTE GOODS OR PERFORMANCE, OR (iii) ANY DIRECT DAMAGES ARISING UNDER THESE SOFTWARE LICENSE TERMS IN EXCESS OF THE FEES PAID FOR THE SOFTWARE GIVING RISE TO THE CLAIM IN THE TWELVE MONTH PERIOD IMMEDIATELY PRECEDING THE DATE THE CLAIM AROSE.  REGARDLESS OF WHETHER YOU WERE ADVISED, HAD OTHER REASON TO KNOW, OR IN FACT KNEW OF THE POSSIBILITY THEREOF AND REGARDLESS OF WHETHER THE LIMITED REMEDIES FAIL THEIR ESSENTIAL PURPOSE, THESE LIMITATIONS OF LIABILITY IN THIS SECTION WILL APPLY TO ANY DAMAGES, HOWEVER CAUSED, AND ON ANY THEORY OF LIABILITY, WHETHER FOR BREACH OF CONTRACT, TORT (INCLUDING, BUT NOT LIMITED TO, NEGLIGENCE), OR OTHERWISE.

**Q.  Protection of Software and Documentation.** End User acknowledges that the Software and Documentation are confidential information of Avaya and its suppliers and contain trade secrets of Avaya and its suppliers. End User agrees at all times to protect and preserve in strict confidence the Software and Documentation using no less than the level of care End User uses to protect its own information of a confidential nature and to implement reasonable security measures to protect the trade secrets of Avaya and its suppliers.

**R.  Privacy.** When downloading or using the Software, Avaya might process certain data about You, Your network and Your device (e.g., email address, phone - extension number, device IDs, IP addresses, location, etc.). Avaya will keep Your data confidential and will only use Your data to the extent necessary to execute these Software License Terms and to ensure compliance with these Software License Terms. In case such data identifies or may be used to identify an individual ("**Personal Data**"), this Personal Data will generally not leave the Avaya group Affiliates and will only be transmitted to third parties if necessary for the above. Avaya will ensure in such case that all applicable data protection requirements are met, especially regarding international data transfers. For Avaya Affiliates this is achieved through the Avaya Binding Corporate Rules, which are published on the Avaya website mentioned below, for international transfers to other third parties this will be ensured through standard data protection clauses adopted by the EU-Commission or other appropriate safeguards. Your data will only be stored for the time necessary to achieve the above purpose or if statutory retention periods require longer storage times, for such longer time. Respective data subjects have the right to request access to and rectification or erasure of their Personal Data and can request restriction of processing of their Personal Data. They have the right to data portability, subject to the respective statutory requirements as well as the right to lodge a complaint with a competent supervisory authority. For more information on data subject rights or in case of any questions related to Avaya processing Personal Data, please refer to the Documentation and its Global Privacy Website available at https://www.avaya.com/en/privacy/website/

**S.  High Risk Activities.** The Software is not fault-tolerant and is not designed, manufactured or intended for any use in any environment that requires fail-safe performance in which the failure of the Software could lead to death, personal injury or significant property damage ("**High Risk Activities**"). Such environments include, among others, control systems in a nuclear, chemical, biological or other hazardous facility, aircraft navigation and communications, air traffic control, and life support systems in a healthcare facility. End User assumes the risks for its use of the Software in any such High Risk Activities.

**T.  Import/Export Control.** End User is advised that the Software is of U.S. origin and subject to the U.S. Export Administration Regulations (""**EAR**"). The Software also may be subject to applicable local country import/export laws and regulations. Diversion contrary to U.S. and/ or applicable local country law and/ or regulation is prohibited. You agree not to directly or indirectly export, re-export, import, download, or transmit the Software to any country, end user or for any use that is contrary to applicable U.S. and/ or local country regulation or statute (including but not limited to those countries embargoed by the U.S. government). You represent that any governmental agency has not issued sanctions against the End User or otherwise suspended, revoked or denied End User's import/export privileges. You agree not to use or transfer the Software for any use relating to nuclear, chemical or biological weapons, or missile technology, unless authorized by the U.S. and or any applicable local government by regulation or specific written license. Additionally, You are advised that the Software may contain encryption algorithm or source code that may not be exported to government or military end users without a license issued by the U.S. BIS and any other country's governmental agencies, where applicable.

**U.  U.S. Government End Users.** The Software is classified as "commercial computer software" and the Documentation is classified as "commercial computer software documentation" or "commercial items," pursuant to 48 CFR FAR 12.212 or DFAR 227.7202, as applicable. Any use, modification, reproduction, release, performance, display or disclosure of the Software or Documentation by the Government of the United States shall be governed solely by the terms of these Software License Terms and shall be prohibited except to the extent expressly permitted by these Software License Terms, and any use of the Software and/ or Documentation by the Government constitutes agreement to such classifications and to these Software License Terms.

**V.  Acknowledgement.** End User acknowledges that certain Software may contain programming that: (i) restricts, limits and/or disables access to certain features, functionality or capacity of such Software subject to the End User making payment for licenses to such features, functionality or capacity; or (ii) periodically deletes or archives data generated by use of the Software and stored on the applicable storage device if not backed up on an alternative storage medium after a certain period of time; or (iii) may rely on a third party analytics service to collect and generate aggregated user data which Avaya may use to improve product performance and its functionality. For Google Analytics, please refer to the following website for more information: http://www.google.com/policies/privacy/partners/ (or such successor site as designated by Google). By accepting these Software License Terms and continued use of the Software, service, or subscription, You consent to the use of such an analytics service to analyze such data.

**W.  Miscellaneous.** These Software License Terms and any dispute, claim or controversy arising out of or relating to these Software License Terms ("**Dispute**"), including without limitation those relating to the formation, interpretation, breach or termination of these Software License Terms, or any issue regarding whether a Dispute is subject to arbitration under these Software License Terms, will be governed by New York State laws, excluding conflict of law principles, and the United Nations Convention on Contracts for the International Sale of Goods.

Any Dispute shall be resolved in accordance with the following provisions. The disputing party shall give the other party written notice of the Dispute. The parties will attempt in good faith to resolve each Dispute within thirty (30) days, or such other longer period as the parties may mutually agree, following the delivery of such notice, by negotiations between designated representatives of the parties who have dispute resolution authority. If a Dispute that arose anywhere other than in the United States or is based upon an alleged breach committed anywhere other than in the United States cannot be settled under these procedures and within these timeframes, it will be conclusively determined upon request of either party by a final and binding arbitration proceeding to be held in accordance with the Rules of Arbitration of the International Chamber of Commerce by a single arbitrator appointed by the parties or (failing agreement) by an arbitrator appointed by the President of the International Chamber of Commerce (from time to time), except that if the aggregate claims, cross claims and counterclaims by any one party against any or all other parties exceed One Million US Dollars at the time all claims, including cross claims and counterclaims are filed, the proceeding will be held in accordance with the Rules of Arbitration of the International Chamber of Commerce by a panel of three arbitrator(s) appointed in accordance with the Rules of Arbitration of the International Chamber of Commerce. The arbitration will be conducted in the English language, at a location agreed by the parties or (failing agreement) ordered by the arbitrator(s). The arbitrator(s) will have authority only to award compensatory damages within the scope of the limitations of these Software License Terms and will not award punitive or exemplary damages. The arbitrator(s) will not have the authority to limit, expand or otherwise modify the terms of these Software License Terms. The ruling by the arbitrator(s) will be final and binding on the parties and may be entered in any court having jurisdiction over the parties or any of their assets. The parties will evenly split the cost of the

© 2016-2018  Avaya Inc. All rights reserved. Avaya and the Avaya Logo are trademarks of Avaya Inc. and may be registered in certain jurisdictions. All trademarks identified by the ® or TM are registered trademarks, service marks or trademarks, respectively, of Avaya Inc. All other trademarks are the property of their respective owners.

arbitrator(s)' fees, but each party will bear its own attorneys' fees and other costs associated with the arbitration. The parties, their representatives, other participants and the arbitrator(s) will hold the existence, content and results of the arbitration in strict confidence to the fullest extent permitted by law. Any disclosure of the existence, content and results of the arbitration shall be as limited and narrowed as required to comply with the applicable law. By way of illustration, if the applicable law mandates the disclosure of the monetary amount of an arbitration award only, the underlying opinion or rationale for that award may not be disclosed.

If a Dispute by one party against the other that arose in the United States or is based upon an alleged breach committed in the United States cannot be settled under the procedures and within the timeframe set forth above, then either party may bring an action or proceeding solely in either the Supreme Court of the State of New York, New York County, or the United States District Court for the Southern District of New York. Except as otherwise stated above with regard to arbitration of Disputes that arise anywhere other than in the United States or are based upon an alleged breach committed anywhere other than in the United States, each party to these Software License Terms consents to the exclusive jurisdiction of those courts, including their appellate courts, for the purpose of all actions and proceedings.

The parties agree that the arbitration provision in this Section may be enforced by injunction or other equitable order, and no bond or security of any kind will be required with respect to any such injunction or order. Nothing in this Section will be construed to preclude either party from seeking provisional remedies, including but not limited to temporary restraining orders and preliminary injunctions from any court of competent jurisdiction in order to protect its rights, including its rights pending arbitration, at any time. In addition and notwithstanding the foregoing, Avaya shall be entitled to take any necessary legal action at any time, including without limitation seeking immediate injunctive relief from a court of competent jurisdiction, in order to protect Avaya's intellectual property and its confidential or proprietary information (including but not limited to trade secrets).

If any provision of these Software License Terms is determined to be unenforceable or invalid, these Software License Terms will not be rendered unenforceable or invalid as a whole, and the provision will be changed and interpreted so as to best accomplish the objectives of the original provision within the limits of applicable law. The failure to assert any rights under the Software License Terms, including, but not limited to, the right to terminate in the event of breach or default, will not be deemed to constitute a waiver of the right to enforce each and every provision of the Software License Terms in accordance with their terms. If you move any Software, and as a result of such move, a jurisdiction imposes a duty, tax, levy or fee (including withholding taxes, fees, customs or other duties for the import and export of any such Software), then you are solely liable for, and agree to pay, any such duty, taxes, levy or other fees.

**X. Agreement in English.** The parties confirm that it is their wish that these Software License Terms, as well as all other documents relating hereto, including all notices, have been and shall be drawn up in the English language only. Les parties aux présentes confirment leur volonté que cette convention, de même que tous les documents, y compris tout avis, qui s'y rattachent, soient rédigés en langue anglaise.

© 2016-2018  Avaya Inc. All rights reserved. Avaya and the Avaya Logo are trademarks of Avaya Inc. and may be registered in certain jurisdictions. All trademarks identified by the ® or TM are registered trademarks, service marks or trademarks, respectively, of Avaya Inc. All other trademarks are the property of their respective owners.