| | |
|---|---|
| SIDEMAN & BANCROFT LLP<br>RICHARD J. NELSON (SBN 141658)<br>Email: *rnelson@sideman.com*<br>ZACHARY J. ALINDER (SBN 209009)<br>Email: *zalinder@sideman.com*<br>LYNDSEY C. HEATON (SBN 262883)<br>Email: *lheaton@sideman.com*<br>ANGELA M. HE (SBN 319351)<br>Email: *ahe@sideman.com*<br>One Embarcadero Center, 22nd Floor<br>San Francisco, California 94111-3711<br>Telephone: (415) 392-1960<br>Facsimile:  (415) 392-0827<br><br>Attorneys for Plaintiff<br>AVAYA INC. | SHEPPARD, MULLIN, RICHTER &<br>  HAMPTON LLP<br>A Limited Liability Partnership<br>Including Professional Corporations<br>BRENDAN G. DOLAN (SBN 126732)<br>Email: bdolan@sheppardmullin.com<br>LAURA L. CHAPMAN (SBN 167249)<br>Email: lchapman@sheppardmullin.com<br>YASAMIN PARSAFAR (SBN 287617)<br>Email: yparsafar@sheppardmullin.com<br>Four Embarcadero Center, Suite 1700<br>San Francisco, CA 94111-4109<br>Telephone: (415) 774-2965<br>Facsimile:  (415) 434-3947<br><br>Attorneys for Defendant<br>ATLAS SYSTEMS, INC. |

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| AVAYA INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>RAYMOND BRADLEY PEARCE, et al.,<br><br>Defendants. | Case No. 3:19-cv-00565 SI<br><br>**JOINT STATEMENT OF DISCOVERY DISPUTE REGARDING AVAYA'S INTENTION TO CONTACT AND SUBPOENA CUSTOMER ENTITIES**<br><br>Hearing via Videoconference Requested by Atlas<br><br>Judge:   Honorable Susan Illston |

Pursuant to Section 3 of Your Honor's Standing Order, Plaintiff Avaya Inc. ("Avaya") and Defendant Atlas Systems, Inc. ("Atlas") submit this Joint Statement of Discovery Dispute regarding Avaya's intention to contact and subpoena customer entities. The parties met and conferred by videoconference on January 15, 2021.  Plaintiff agreed not to contact any Atlas customer unless and until permitted by the Court.  The parties agreed to postpone the submission of this statement pending participation in a mediation which took place on February 17, 2021.

## I. ATLAS'S STATEMENT

Defendant, Atlas Systems, Inc. seeks a protective order prohibiting Plaintiff, Avaya, Inc., from contacting or issuing subpoenas to Atlas's customers pursuant to FRCP 26 (c)(1)(A) and 45(d)(1) and (3). The need for such a protective order was previously demonstrated. (Doc. 204.) In response, this Court issued a protective order on July 2, 2020 stating: "[T]he Court is mindful of the concerns Atlas has raised about its customers, and instructs Avaya that if it wishes to contact Atlas' customers, it may do so only by providing Atlas with 5 days advance notice of such contact. If Avaya wishes to subpoena any Atlas customers, it may only do so by stipulation or upon a showing of good cause to the Court." (Doc. 205 at 1.) Good cause is lacking. Avaya wants to contact and subpoena customers <u>before it has taken a single deposition of a single defendant</u>. Avaya fails to provide the subpoena or the specific information it seeks from customers, let alone explain what material information customers have that Avaya cannot obtain from a less burdensome source, including Avaya itself. ***As the Court has previously recognized, contacting customers will have a <u>devastating</u> effect on Atlas's business, as Atlas previously explained.*** (Docs. 204; 205.) Harm to Atlas is not outweighed by any alleged benefit to Avaya because customers have no relevant information Avaya does not already have.

Under Rule 45(d)(1), a party seeking discovery from a non-party via subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena" and the court "must enforce this duty." Under Rule 45(d)(3), the court "must" quash or modify a subpoena that subjects the recipient to undue burden. "The Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts." *Lemberg Law LLC v. Hussin*, No. 16-mc-80066-JCS, 2016 WL 3231300, at *5 (N.D. Cal. June 13, 2016).

A party must limit discovery if it can be obtained from another more convenient source. Fed. R. Civ. P. 26(b)(2)(C)(i); *Anderson v. Ghaly*, No. 15-cv-05120-HSG, 2020 WL 3184494, at *10 (N.D. Cal. June 15, 2020). "The scope of permissible discovery under Federal Rule of Civil Procedure 26(b)(2) is not unlimited, and it is the court's duty to consider whether 'the burden or expense of the proposed discovery outweighs its likely benefit…'" *Farmer v. Senior Home Companions of Indiana, Inc.*, No. 1:08-cv-0379-DFH-JMS, 2009 WL 564193, at *2 (S.D. Ind. Mar. 5, 2009) (**quashing subpoena served on defendant's customers**); see also *HDSherer LLC v. Natural Molecular Testing Corp.* 292 F.R.D. 305, 308 (D. S.C. 2013) (**same; subpoena will harm customer relationships**); *Nelson-Ricks Cheese Co. v. Lakeview Cheese Co., LLC*, No. 4:16-cv-00427-DCN, 2017 U.S. Dist. LEXIS 178778, at *7-8 (D. Idaho Oct. 26, 2017) (**same; trademark case**); *Noble Roman's, Inc. v. Hattenhauer Distrib. Co.*, 314 F.R.D. 304, 306 n.2 (S.D. Ind. 2016). Similarly, here, customer discovery is very harmful to Atlas and Avaya has not tied any information from any customer to any element of its claims or explained why any particular information can't be obtained from Avaya or Atlas. Avaya cites *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975), which does not involve third party discovery.

<u>**There Is No "Good Cause" Required by the Court's Order (Doc. 205).**</u> Avaya wrongly claims that Atlas advances a "double standard" based on two interrogatories. Not so. The TAC alleges that Avaya has copyright registrations on software that runs its IP Office Business phone system and that Atlas "distributed software infringing Avaya's copyrights." (Doc. 249, ¶ 22; see also ¶¶48-58.) Atlas did not do so. It served interrogatories asking Avaya for facts supporting its claim. (Ex. 1.) Interrogatory <u>7</u> asks about <u>direct</u> copyright infringement by Atlas. To answer Rog 7, Avaya would identify the product(s) in Atlas's sales reports (which Atlas previously produced) that Avaya contends constitutes Avaya's copyrighted-registered software. Avaya's responses reveal no such products. *See* Ex. 1. Avaya's direct infringement claim relies on a (faulty) <u>legal argument</u> that selling license keys (which are not copyright-registered and which are functional and not subject to copyright protection under Copyright Office Compendium Third § 721.7) constitutes

"distribution" of its IP Office software under 17 U.S.C. § 106, and therefore, direct copyright infringement. **Customers have no discoverable information on this legal issue**, and Avaya fails to identify any such information customers would have. Atlas does not contend it sold "random" keys as Avaya argues. Each key Atlas sold was genuine, created on Avaya's system by Avaya, and functioned as Avaya intended when Avaya accepted the keys and unlocked phone features.

Interrogatory 8 asks about <u>indirect</u> infringement by Atlas, which requires the <u>end-user</u> to perform an act enumerated in 17 U.S.C. § 106. *Miller v. Facebook, Inc.*, No. C 10-00264 WHA, 2010 WL 1292708, at *3 (N.D. Cal. Mar. 31, 2010); *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001). Avaya alleges that defendants' customers "use, copy and distribute" Avaya's copyrighted work. (Doc 249 at ¶ 76.) "Use" is not an exclusive right in 17 U.S.C. § 106, and thus cannot be the basis of a copyright infringement claim. *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 463 (1984); *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 155 (1975). Thus, the end-user must copy or distribute the registered work. They do not, as revealed in Avaya's rog response. *See* Ex. 1. Avaya states below "Atlas' customers will be able to confirm … the steps that the customer took to use, run, and copy the infringing software." **Avaya already has this information**; it knows how its products work and how, if at all, customers "copy and distribute" Avaya's copyrighted work, which Avaya alleged in its TAC. (Doc 249 at ¶ 76.) Neither Avaya's interrogatory responses (Ex. 1) nor initial disclosures (Exs. 2-3) nor its section below states that it needs information from customers to prove its claims.

**Avaya's Argument Regarding Telcom Is Premature and Involves Only One Customer.** Avaya argues below that discovery from customers is relevant to the Lanham Act issue of whether customers were confused. That defies reason. Atlas and DBSI have confirmed that they will not challenge likelihood of confusion – Atlas sold product to customers as genuine Avaya products. Avaya argues below that "Telcom" a brand new defendant, may take a different position. There is no reason to believe that. In any event: (1) there is only one customer at issue with regard to Telcom, Sourcing Solutions, whom Avaya contacted in 2016; and (2) Avaya's request for customer contact and subpoenas is premature before Telcom makes an appearance.

**Customers Have No Information on the First Sale Defense.** Avaya argues that it may need to respond to a fair use defense to the copyright claim by showing that "infringing used software licenses were not licensed to Atlas' customer." <u>Customers have no evidence that they are not licensed</u>. <u>Avaya knows which end users are licensed, as it accepted the keys and unlocked phone features.</u> Avaya asks, "Did the customer really not think that it was getting a valid Avaya software license?" No. It's undisputed that Alas sold the keys as genuine Avaya product, as Avaya's complaint alleges and as Atlas acknowledges. Avaya asks, "Did the license key sold by Atlas not distribute to the customer the specific software and/or software features that the customer ordered?" This is the same <u>legal issue</u> above as to "distribution" of software under § 106.

**Customers Threw Packaging Away.** Avaya alleges that "information from Atlas' customers would also be directly relevant to Atlas' purported Lanham Act fair use defense." This is relevant only to the claim of "counterfeit packaging" of phones that Atlas sold in 2015 and 2016, which Avaya admits knowing about in 2016. (Doc. 249, ¶56.) Packaging is typically promptly thrown away; there is no reason to believe that any customer saved any packaging from 2016.

**There Is No Basis for a Third Party Fishing Expedition Regarding 13,000+ Products.** Only one batch of 1,600 phones is at issue in the counterfeit claim. They are not "still in the hands of customers." Avaya has them, as shown in a photo in the McCann declaration. (Doc. 231-3, ¶14.). Avaya states that because Atlas purchased allegedly counterfeit phones from Defendant Telcom in 2016, thousands of other products purchased from Telcom since then "very likely include counterfeits." Such speculation is no justification for harassing Atlas's customers; no other alleged counterfeits have come to light in the past five years. Avaya admits it knew about the allegedly

counterfeit phones since 2016, (Doc. 249, ¶ 56), and certainly knew its phones were in use in "sensitive applications" back then, but did nothing for years. Avaya now rushes to get discovery from Telcom's customers before Telcom appears in this action and before Avaya takes discovery from Telcom, without even informing the court what, precisely, it seeks. This is improper.

**Complaints Were Previously Produced.** Avaya wants "complaints from customers." Atlas produced documents regarding customer complaints. And customers who purchased Avaya-branded products know that they can complain directly to Avaya. According to Avaya, one customer did so in 2016. (Doc. 249, ¶ 56.) Customers have no information Avaya doesn't have.

**Customers Don't Have Damages Information**: Customer information is irrelevant to whether this is an "exceptional case." Customers will not shed light on what Atlas knew about the provenance of products Atlas admits it sold as genuine Avaya product. Atlas believed the products were genuine, and, as the complaint alleges, represented them as such. Nothing in Avaya's Initial Disclosures, Exs. 2-3, has any damage computation requiring customer information, and not one customer is identified as a person with discoverable information. Avaya claims that customer evidence is "relevant to … elasticity" and "collateral and/or convoyed sales." Avaya's initial disclosures are silent as to these theories. (Exs. 2-3.) A party may not pursue a damages theory not identified in its Rule 26 disclosures. *TCF Inventory Fin., Inc. v. Northshore Outdoor, Inc*., No. 1: 11 CV 85, 2012 U.S. Dist. LEXIS 91997, at *10-11 (N.D. Ohio July 3, 2012). Evidence of convoyed sales is not discoverable from customers. *Paradox Sec. Sys. v. ADT Sec. Servs.*, No. 2:06-CV-462 (TJW), 2008 U.S. Dist. LEXIS 128168, at *7 (E.D. Tex. Nov. 12, 2008) ("The Court agrees with the [defendant] that plaintiffs do not need defendants' customer lists to determine convoyed sales or inducement of infringement.") Because of the magnitude of this issue for Atlas, and 2.5 page limitation, if the Court is inclined to permit customer discovery, **Atlas requests leave to file a noticed motion with oral argument**.

## II.   AVAYA'S STATEMENT

Atlas' arguments for a protective order barring all discovery from its customers have already been rejected by the Court in its July 2, 2020 Discovery Order, Dkt. No. 205, where the Court set forth a process for this customer discovery to proceed.  Same as then, Atlas' arguments above to bar such discovery rely on misdirection and misapprehension of the facts and law.  In the end, Atlas does not – and cannot – remotely meet its burden in establishing good cause to enter an order blocking all customer discovery.  *Blankenship*, 519 F.2d at 429 (requiring good cause). Atlas has already successfully delayed such discovery by over six months, and its plainly stated intention to try to use its customers as both sword and shield is inequitable to say the least.

As a preliminary matter, Atlas cannot, on the one hand, assert any defense or affirmative defense, based in whole or in part, on any matter relating to its customers, while blocking discovery into these same customers.  Here are two stark examples from Atlas' interrogatories:

- Atlas Interrogatory No. 7 states: "If you contend that Atlas's customers infringe Avaya's registered copyrights by using Avaya's software, as alleged in Paragraph 74 of the Second Amended Complaint, STATE ALL FACTS that support such contention, including, but not limited to, for each infringement: 1)IDENTIFY the customer(s) who allegedly used the Avaya software and the date of such use; 2) the title, version, publication date and authors of the Avaya software that was allegedly used; 3) the portion of the Avaya software that is allegedly protected by copyright; 4) the Avaya Registration Numbers that cover the software; and 5) explain how such use of Avaya's software constitutes a violation of Avaya's exclusive rights under 17 U.S.C. § 106."
- Likewise, Atlas Interrogatory No. 8 seeks similar specifics about Atlas' customers relating to whether Atlas induced those customers to infringe Avaya's copyrights.

SMRH:4845-6708-0157.4

*See* Ex. 1, Responses to Atlas' Third Set of Interrogatories, at Interrogatory Nos. 7-8. These exemplar requests highlight the plain double standard that Atlas seeks to impose, in attempting to defend against Avaya's claims based on its own customers, while at the same time blocking Avaya from getting parallel discovery from both Atlas and its customers about these same issues.

Consistent with Atlas' discovery requests, Atlas apparently contests whether it induced its customers to violate Avaya's copyrights. Atlas also appears to contest whether it offered for sale and then distributed to its customers Avaya software and software licenses (as Avaya alleges), rather than simply a random set of alphanumeric keys that just happen to unlock the exact Avaya software the customer ordered (as Atlas disingenuously argues). Atlas' customers will be able to confirm that they understood that Atlas was offering them, and that they were purchasing, specific Avaya software and/or software features and what they thought was a valid license to use the same, not just random key codes. As to Atlas' request for all of "the circumstances of the infringement" above, Atlas' customers will be able to confirm not only that Atlas distributed the same to them in exchange for money, but also the precise steps that the customer undertook to load the infringing software licenses into their systems and then the steps that the customer took to use, run, and copy the infringing unlicensed software, as both the customer and Atlas intended. These issues, of course, are relevant to Avaya's direct and indirect copyright infringement claims, as Atlas' own interrogatories above also show. *See, e.g., S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087 (9th Cir. 1989); *see also MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 518-19 (9th Cir. 1993). And that is just the tip of the iceberg.

Discovery of Atlas' customers is also directly relevant to Atlas' claimed affirmative defenses. Atlas' confusing recitation of the first sale doctrine and license issues above proves the point. As discussed above, Atlas disingenuously contends that it merely distributed random alphanumeric key codes here. This assertion of course is a blatant attempt to avoid settled Ninth Circuit law that the first sale doctrine does not apply to software licenses. *Vernor v. Autodesk, Inc.*, 621 F.3d 1102, 1107 (9th Cir. 2010). However, this also puts their customers directly at issue. Did the customer really think it was getting a random key code, not an Avaya software license? Did the license key sold by Atlas not distribute to the customer the specific software and/or software features that the customer ordered? Atlas cited and then deleted *Adobe Sys. Inc. v. A&S Elec., Inc*. because it puts Atlas' license key argument to rest, as it held that "even if the serial license key is not separately subject to copyright protection, Defendants' alleged distribution of the code to facilitate the sale and use of software it had no right to distribute is sufficient to state a claim for copyright infringement." 153 F.Supp.3d 1136, 1144 (N.D. Cal. 2015). Because Atlas has asserted a first sale doctrine defense, Avaya may also need to show that Atlas' customers did not have a valid license for previously sold licenses. *Adobe Systems Inc. v. Christenson*, 809 F.3d 1071, 1079 (9th Cir. 2015). Customer discovery is also relevant to any trademark fair use defense, including whether Atlas used more of Avaya's marks than necessary and whether Atlas falsely suggested sponsorship, endorsement or authorization in its communications with customers.

Discovery of Atlas' customers is also directly relevant to elements of Avaya's affirmative claims. For example, Atlas has contested whether products it sold are counterfeit. Dkt. No. 239. More of such products of course are still in the hands of its customers. By challenging both the counterfeit analyses themselves and whether sampling is appropriate, Atlas has made further discovery of counterfeit products in their customers' possession necessary. Atlas' contention that Avaya already has some voluntary information from the one customer, who bought the 1600+ counterfeit phones identified in the Complaint, and that the counterfeit phones had to be replaced, is not well taken. Here, Atlas is even attempting to block further contact with that customer (Sourcing Solutions, which then sold the counterfeit products to a large wireless carrier). As Avaya alleged "[t]his is but one example of Atlas' counterfeiting," (Complaint, ¶56); indeed, Atlas

bought over 15,000 Avaya products from the same counterfeit source alone, Defendant Telcom International ("Telcom"), dwarfing the 1600+ counterfeit phones alleged in the Complaint. The remaining 13,000+ Avaya products very likely include counterfeits, including those trafficked into government, healthcare, and other sensitive areas. For example, Atlas purchased 3000 Avaya Model 6221 phones from Telcom in June 2019, and then resold 200 of these phones to the Naval Undersea Warfare Center on April 1, 2020. And Atlas has other high volume purchases of "new" Avaya products from highly suspect sources. All of these warrant close inspection and discovery.

Further, Atlas contends the alleged unlawful conduct was not willful or knowing, making what Atlas represented to the customers about the provenance, quality, and/or authenticity of the infringing/stolen software licenses and the counterfeit products and counterfeit packaging directly relevant. Atlas does not dispute this point above. Did Atlas represent the infringing and/or stolen products as "new" or "genuine" despite all the red flags? Has Atlas informed its customers that products Atlas bought from Telcom have a high likelihood of being counterfeit? Did Atlas' customers question the provenance, quality, and/or authenticity of such products and what was Atlas' response? This last point is all the more important, because Atlas has claimed in discovery not to keep any record of complaints from customers, except for haphazard reporting regarding returns in its Quickbooks database. And, while Atlas and the DBSI Defendants have confirmed that they will not defend against any claim based on a defense of likelihood of confusion, Telcom may not agree. So consumer confusion discovery is still relevant here.

Next, discovery regarding Atlas' customers also is highly relevant to calculation of damages. In addition to exceptional case and willfulness evidence discussed above, customer evidence is also, for example, directly relevant to understand elasticity, including but not limited to price sensitivity and substitutability. Customer evidence is also relevant to understanding collateral or convoyed sales, and the importance of being able to offer cut-rate software licenses in being able to sell other products and services. Despite Atlas' feigned confusion above, these are standard metrics that are often analyzed in calculating lost profits, which is disclosed in Avaya's Complaint and Initial Disclosures at p. 9:18-23. Atlas cites only one unpersuasive case that denied a motion for U.S. customer data on convoyed sales, where the circuit was "manufactured and sold outside the United States..." *Paradox*, at *1. And, of course, customer contact regarding counterfeit products that are still in these customer networks is vital for damages mitigation, not to mention to reduce harm to these customers and those they serve. Atlas has no answer there either.

Any one of the above issues constitutes sufficient relevance to allow customer discovery, and taken together Atlas' obstruction of such discovery is egregious. But, even if Atlas could establish "good cause" here, the Court should then balance the interests in allowing discovery against the relative burdens that would be imposed. *Braun v. Primary Distributor Doe Number 1*, 2013 WL 12142998 (N.D. Cal. Jan. 11, 2013). Here, any burden is minimal, and these customers are Avaya customers, so Avaya has no interest in creating undue burden for them. There is also a stipulated protective order in place to protect confidentiality. And Atlas' other cited caselaw is inapposite, relating to privileged information, overbroad discovery after the cut-off, where the Defendant agreed to or was ordered by the Court to produce the responsive documents, or is otherwise irrelevant here. At base, a protective order barring all customer discovery is not remotely warranted and would cause substantial prejudice to Avaya and its ability to present its case. Atlas' arguments are also not sufficient to require a hearing or a fully noticed motion. Avaya therefore respectfully requests that the Court allow Avaya to contact any Atlas customer necessary for purposes of this litigation, with 5 days notice to Atlas, as set forth in the Court's July 2, 2020 Order, and to allow subpoenas to issue to up to 20 Atlas customers, with leave to seek more customer discovery, if necessary. Unless it seeks interlocutory appeal, Atlas has also agreed to finally provide customer address and contact information if the Court denies its request here.

| | | |
|---|---|---|
| Dated: March 1, 2021 | | Respectfully submitted, |
| | | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP |
| | | By  /s/ Laura L. Chapman |
| | | Brendan G. Dolan |
| | | Laura L. Chapman |
| | | Yasamin Parsafar |
| | | Attorneys for Defendant ATLAS SYSTEMS, INC. |
| DATED: March 1, 2021 | | Respectfully submitted, |
| | | SIDEMAN & BANCROFT LLP |
| | | By:  /s/ Zachary J. Alinder |
| | | Zachary J. Alinder |
| | | Attorneys for Plaintiff AVAYA INC. |